953 So.2d 890 (2007)
STATE of Louisiana, Appellee
v.
Paul G. LATHAN, Jr., Appellant.
No. 41,855-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2007.
*892 Louisiana Appellate Project, by Sherry Watters, New Orleans, for Appellant.
Robert W. Levy, District Attorney, Clifford R. Strider, III, Assistant District Attorney, for Appellee.
Before DREW, MOORE & SEXTON (Pro Tempore), JJ.
*893 SEXTON, J.
Defendant, Paul G. Lathan, appeals his conviction and sentence for manslaughter. He was indicted for second degree murder, but the jury convicted him of the responsive verdict of manslaughter. The trial court sentenced Defendant to 27 years at hard labor with credit for time served. Defendant now appeals. For the reasons set forth below, Defendant's conviction and sentence are affirmed.

FACTS
Defendant approached his neighbor, Roy Jenkins, at his workplace and told him that he thought the victim, Ricky Lyons, had broken into his house. Mr. Jenkins confirmed that the victim probably had done it because he was known for doing things like that. Defendant responded that he was going to kill the victim the next time he saw him. Mr. Jenkins did not think Defendant was serious, so he did not repeat what Defendant had said to anyone.
The next day, a few minutes after 8:00 p.m. on the evening of July 9, 2003, Betty Crawford was taking her daughter home when she saw the victim, whom she knew, walking down Highway 146 outside the Ruston city limits. She dropped off her daughter and intended to come back to give the victim a ride. Ms. Crawford was waiting at the intersection of Highway 146 and South Chatham Spur as the victim walked toward her car. Before he could get there, however, a black Volvo driving down Highway 146 slammed on its brakes, swerving to a stop between the victim and Ms. Crawford's car. Ms. Crawford recognized the driver of the black Volvo as Defendant.
Ms. Crawford saw Defendant get out of the car with what she originally believed was a long stick, which she eventually realized was actually a "long gun." The victim had nothing in his hands, appearing to be unarmed. She rolled down her window so she could hear what they were saying, but she could only hear Defendant talking. Defendant said, "Where's my s* * *? You're gonna tell me where my s* * * is. You think I'm playing with you, don't you?" At that point, Defendant raised up the gun. Ms. Crawford drove away, and as she did so, she heard two shots fired.
Mr. Jenkins was in his kitchen when he heard the shots fired. He went out on his front porch to see what had happened and saw Defendant in his yard with a gun. Defendant walked to the corner of his house, bent over by a bush, walked back to his car and then drove away in his black Volvo. At the time, Mr. Jenkins could not see the victim's body because it was in the grass and surrounded by high weeds.
When paramedics arrived on the scene, the victim had an obvious gunshot wound to the head. Although the victim was breathing and had a pulse when treated by paramedics at the scene, he was later placed on life support at the hospital and eventually died. According to Dr. Frank Peretti, the forensic pathologist, it was a close contact gunshot wound just above the victim's right eyelid. Dr. Peretti testified that the muzzle of the gun was approximately one-half to three-fourths inches away from the victim at the time the gun was fired.
Investigators found two spent shells at the scene, which were later identified by a firearms expert as having been fired from the same weapon and as being of a caliber typically fired from a semi-automatic rifle. Although Defendant voluntarily gave a statement and showed investigators where he abandoned the weapon after the shooting, investigators were unable to find the weapon.
*894 The grand jury returned a bill of indictment on August 25, 2003, charging Defendant with second-degree murder. The trial court denied Defendant's motion to quash filed October 24, 2005, the date this matter was set for trial. Defendant was tried by a jury commencing on October 25, 2005. The jury returned a responsive verdict of manslaughter on October 28, 2005. The trial judge ordered a pre-sentence investigation, and, after a sentencing hearing, sentenced Defendant to 27 years at hard labor with credit for time served. Defendant appeals both the conviction and the sentence.

DISCUSSION
Defendant argues that the trial court erred in denying his motion to quash based upon the State's failure to bring the case to trial within two years of instituting proceedings. The State has two years from the institution of prosecution to commence trial for a non-capital felony. La. C. Cr. P. art. 578(A)(2); State v. Allen, 03-2815 (La.4/23/04), 871 So.2d 1097. In the context of this case, "institution of prosecution" occurred upon the finding of an indictment pursuant to La. C. Cr. P. art. 934(7). State v. Harris, 29,574 (La.App. 2d Cir.5/7/97), 694 So.2d 626, citing State v. Butler, 302 So.2d 585 (La.1974). A motion to quash is the proper procedural vehicle when a defendant alleges that the time limitation for the commencement of trial has expired. La. C. Cr. P. art. 532(7); State v. Harris, supra; State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284. When a defendant has brought an apparently meritorious motion to quash based upon prescription, the State bears a heavy burden to demonstrate that the time limitation period has been interrupted or that it has been suspended so that the time limitation has not yet expired. State v. Morris, 99-3235 (La.2/18/00), 755 So.2d 205, citing State v. Joseph, 93-2734 (La.6/3/94), 637 So.2d 1032; State v. Rome, supra; see also State v. Harris, supra.
The purpose of Article 578 is to enforce a defendant's right to a speedy trial and to prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time. State v. McDonald, 30,854 (La.App. 2d Cir.8/19/98), 718 So.2d 542, citing State v. Rome, supra; State v. Barley, 29,482 (La. App. 2d Cir.6/18/97), 698 So.2d 36. When a defendant files a preliminary plea, however, the two-year time period established by La. C. Cr. P. art. 579 is suspended. La. C. Cr. P. art. 580; State v. Harris, supra; State v. Evans, 627 So.2d 664 (La. App. 2d Cir.1993). A preliminary plea is any pleading or motion filed by the defense that delays trial, which includes motions to quash, motions to suppress, applications for discovery, bills of particulars and motions for continuances. State v. Allen, supra, citing State v. Brooks, 02-0792 (La.2/14/03), 838 So.2d 778; State v. Brooks, 505 So.2d 714 (La.1987), cert denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Fabacher, 362 So.2d 555 (La.1978); State v. Cranmer, 306 So.2d 698 (La.1975); State v. Elfert, 247 La. 1047, 175 So.2d 826 (1965). The suspension lasts from the date the motion is filed until the date the trial court rules on the motion and that relevant time period is not counted towards the two-year time limitation. State v. Harris, supra, citing State v. Cranmer, supra. After the trial court rules on the motion, the State has either the remainder of the time limitations or a minimum period of one year from the date of ruling in which to commence trial, whichever time is longer. La. C. Cr. P. art. 580; State v. Jackson, 40,376 (La.App. 2d Cir.12/14/05), 916 So.2d 1274, writ denied, 06-0442 (La.9/22/06), 937 So.2d 376.
*895 In the case sub judice, based on Defendant's August 25, 2003 indictment, the State had until August 24, 2005, to commence trial. Even so, the minutes indicate that Defendant filed a series of motions for continuance, the latest one being filed on February 28, 2005. As a preliminary pleading, the motion for continuance suspended the limitation period and the State had an additional year from the trial court's ruling on the motion to commence trial. Jury selection in the case began on October 25, 2005, which was well within the time limitation period. See La. C. Cr. P. art. 761. Accordingly, the trial court properly denied Defendant's motion to quash the indictment based upon prescription.
Defendant contends that his motions for continuance should not toll the prescription period because they were not in writing, as required by La. C. Cr. P. art. 707:
A motion for continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial. Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
The requirement that a motion for continuance be made in writing can be waived under extenuating circumstances. State v. Overton, 337 So.2d 1058 (La.1976); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747; see also, State v. Washington, 407 So.2d 1138 (La.1981). For this reason, the fifth and third circuits have held that an oral motion for continuance suspends the limitations period. State v. Watts, 99-57 (La.App. 5th Cir.5/19/99), 738 So.2d 628; State v. Fanguy, 94-143 (La. App. 3d Cir.10/5/94), 643 So.2d 860, writ denied, 94-2726 (La.4/21/95), 653 So.2d 563; State v. Jones, 620 So.2d 341 (La. App. 5th Cir.1993). We agree.
To allow Defendant to delay the trial with oral motions for continuance, but penalize the State for not commencing trial within two years because Defendant failed to make those motions in writing would only give Defendant the benefit of his own failure to comply with the rules. "To now allow the defendant to make use of his own oral motion to continue . . . to allege a prejudicial delay in the start of trial is absurd. The defendant cannot now capitalize on his own request." State v. Fanguy, supra. The State commenced trial within one year of Defendant's last motion for continuance. Therefore, the trial court properly denied Defendant's motion to quash the indictment because the State properly commenced trial in accordance with La. C. Cr. P. arts. 578 and 580. This assignment of error is, therefore, without merit.
In addition, Defendant assigns error to the trial court in granting the State's motion in limine to exclude evidence that the victim was HIV positive, that he was under the influence of cocaine at the time of his death and that he had a reputation for burglarizing houses in the neighborhood. Defendant claims that this violated his right to present a defense so that he could explain the following: (1) that he was confronting the victim over the burglaries; (2) that he was carrying the gun with him to confront the victim because he wanted to avoid a physical confrontation that may expose him to HIV; and, (3) that the presence of cocaine in the victim's body at death could explain the victim's demeanor at the time of the confrontation.
*896 When a defendant attempts to present evidence of a victim's character, it must be for a relevant purpose, such as self-defense. La. C.E. art. 401. La. C.E. art. 404(A)(2) further governs the admissibility of character evidence of a victim. It provides, in pertinent part:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . .
(2) Character of a victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; . . .
This article prohibits character evidence that simply paints the victim as a bad person deserving his fate of death at the hands of the defendant State v. Wade, 33,121 (La.App. 2d Cir.5/15/00), 758 So.2d 987, writ denied, 00-2160 (La.9/28/01), 797 So.2d 684.
In addition, under La. C.E. art. 404, evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that, at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created in the mind of a reasonable person a belief that he was in immediate danger of losing his life or suffering great bodily harm. State v. Scott, 31,379 (La.App. 2d Cir.10/28/98), 720 So.2d 415, writ denied, 99-0170 (La.5/14/99), 741 So.2d 664, citing State v. Gantt, 616 So.2d 1300 (La.App. 2d Cir. 1993), writ denied, 623 So.2d 1302 (La. 1993). An "overt act" within the meaning of La. C.E. art. 404 is "any act of the victim which manifests in the mind of a reasonable person a present intention on his part to kill or do great bodily harm." State v. Scott, supra, quoting State v. Demery, 28,396 (La.App. 2d Cir.8/21/96), 679 So.2d 518, writ denied, 96-2346 (La.2/7/97), 688 So.2d 497. Before being entitled to present evidence of the victim's character, a defendant must present "appreciable evidence" of the overt act. La. C. Cr. P. art. 404; State v. Edwards, 420 So.2d 663 (La.1982); State v. Woodhead, 03-1036 (La.App. 5th Cir.1/27/04), 866 So.2d 995, writ denied, 04-0598 (La.7/2/04), 877 So.2d 144. Once a defendant has presented appreciable evidence of the overt act, "the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and, thus, deny the accused a defense permitted by law." State v. Woodhead, supra, quoting State v. Lee, 331 So.2d 455 (La.1975).
The admissibility of evidence regarding the victim being HIV positive, under the influence of cocaine at the time of his death and having a reputation for burglary is, therefore, contingent on Defendant's presentation of a viable self-defense claim to make the proffered evidence relevant under La. C.E. art. 401 and evidence of an overt or hostile act to be admissible under La. C.E. art. 404.
First, Defendant's self-defense claim fails, as the undisputed evidence shows he was the aggressor. According to La. R.S. 14:21, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless *897 he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." See State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371.
In the case sub judice, the victim was walking along the road when Defendant got out of his car with a rifle and angrily questioned him about the whereabouts of his belongings. The evidence presented does not suggest that the victim was armed. As the aggressor, Defendant is precluded from arguing self-defense. Thus, we conclude that the proffered evidence is inadmissible as irrelevant.
Further, Defendant has failed to produce any evidence that the victim made an overt act or otherwise put him in reasonable fear of immediate loss of life or great bodily injury as required by La. C.E. art. 404(A)(2)(a). The trial court correctly rejected Defendant's assertion that the mere fact that a person has HIV justifies physical aggression out of the fear of contracting the virus. To agree with Defendant's argument would sanction unprovoked violence against those with HIV and contradict the statutory requirements of La. C.E. art. 404(A)(2)(a) in regard to evidence of the victim's character. Without evidence of an overt act or hostile act by the victim toward Defendant, the trial court properly excluded the proffered evidence of victim's HIV positivity, cocaine use and reputation of a thief, as required by La. C.E. art. 404(A)(2)(a).[1]
Furthermore, Defendant claims that he should have been allowed to present evidence that the victim had HIV because the coroner noted in the death certificate that HIV was a contributing cause of death, along with the gunshot wound. Such an argument is disingenuous. The forensic pathologist who performed the autopsy testified that HIV did not cause or contribute to the victim's death because he died of a gunshot wound to the head. Also, the coroner, who is a family practice physician who does not perform autopsies, testified that HIV was not an immediate cause of death and that he did not know if HIV could have contributed to the victim's death. Rather, the coroner testified that he listed it on the death certificate simply because it is a significant disease. Thus, the fact that HIV was listed on the death certificate is irrelevant.
In addition, Defendant argues that the exclusion of the proffered evidence violated his right to present a defense. Both the Sixth Amendment of the United States Constitution and Louisiana Constitution, Art. 1, Section 16, provide that a criminal defendant has the right to present a defense and that all relevant evidence necessary to that defense must be presented for a full adjudication. State v. Johnson, 553 So.2d 865 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990), citing State v. Vigee, 518 So.2d 501 (La.1988). Evidentiary rules may not supersede the fundamental right to present a defense. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198; and State v. Gremillion, 542 So.2d 1074 (La. 1989). This right to present a defense, however, does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration *898 of justice. State v. Mosby, 595 So.2d 1135 (La.1992); State v. Pugh, 02-171 (La.App. 5th Cir.10/16/02), 831 So.2d 341, citing State v. Mosby, supra; State v. Carter, 96-358 (La.App. 5th Cir.11/26/96), 685 So.2d 346; and La. C.E. art. 403.
In support, Defendant cites Chambers, supra; State v. Van Winkle, supra; and State v. Gremillion, supra. In those cases, however, the excluded evidence was highly relevant in proving that someone else was responsible for the offense.[2] However, the supreme court has distinguished Chambers and upheld the exclusion of relevant evidence despite a defendant's claim that it violated his right to present a defense. In State v. Mosby, supra, while acknowledging a defendant's right to present a defense, the supreme court excluded relevant evidence when the probative value of the evidence was substantially outweighed by the danger of confusing and misleading the jury, undue delay and unfair prejudice under La. C.E. art. 403. While in the present case, the evidence was excluded under La. C.E. art. 404(A)(2)(a) and as irrelevant under La. C.E. art. 401, it also creates a danger of unfair prejudice, confusion of the issues, misleading of the jury or an undue waste of time that substantially outweighs any probative value. To exclude such evidence does not violate Defendant's right to present a defense. This assignment is, therefore, without merit.
Finally, Defendant challenges his 27-year sentence as excessive under the circumstances of this case. He highlights his age of 51, his work history and a criminal history of misdemeanors committed 20 years ago during the breakup of his marriage. He characterizes the crime as confronting someone who was high on cocaine and whom he feared due to his belief that the victim had burglarized his house and taken almost all of his belongings. He also argues that he had no intent to kill the victim and that his actions are not likely to occur again.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La. App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and *899 suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
No requirement exists that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385. The trial court shall exercise its sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829 (La. 1981). The trial court has broad discretion to sentence within the statutory limits, and the appellate court will not set aside a sentence as excessive absent a showing of manifest abuse of discretion. State v. Hardy, 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710.
According to La. R.S. 14:31(B), the sentence for manslaughter is imprisonment at hard labor for not more than 40 years. Therefore, a sentence of 27 years falls within the midrange of the sentence that may be imposed. At the sentencing hearing, Defendant testified regarding the shooting and the burglary of his house prior to the shooting, including his assertions that he only brandished the gun because he feared the victim might try to infect him with HIV and that the gun accidentally discharged when the victim ran into the gun. The trial court found that the evidence at trial proved that Defendant was mad at the victim because of two possible burglaries of his house and that Defendant made statements the day before the homicide indicating that he was going to kill the victim. The trial court further found that Defendant's statements at the sentencing hearing were not supported by the facts because the uncontroverted evidence at trial showed that Defendant confronted the victim in anger with a gun and that there was no evidence of the victim acting in an erratic or violent manner. It further noted that the law does not give people the right to kill over theft and that it was concerned that Defendant appeared to think his actions were justified simply because the victim was HIV positive and under the influence of cocaine.
The trial court considered several circumstances in regard to Defendant's sentence. It considered Defendant's age, that this was his first felony conviction, his work history, that his criminal history showed only convictions for misdemeanors that occurred several years ago, the pre-sentence investigation report, that the community expressed support for Defendant and his family and that he had been a model prisoner during the time he had been incarcerated. Further, the trial court found that there would be an undue risk of Defendant committing another crime during a period of suspended sentence or probation; that he was in need of correctional treatment or a custodial environment; that a lesser sentence would deprecate the severity of the crime; that he manifested deliberate cruelty by shooting the victim and leaving him and that he created a risk of death or great bodily harm to others by shooting someone in a neighborhood with houses and people. Thus, review of the record shows that the trial court was cognizant of the sentencing considerations of La. C. Cr. P. art. 894.1. The trial court further noted that it looked to other cases for sentencing guidance, particularly cases of manslaughter in which defendants felt victimized by their victims and had planned to kill based upon those feelings.
By sentencing Defendant to 27 years, the trial court was more lenient than recommended *900 by the pre-sentence investigation, which urged the trial court to impose the harshest penalty allowed. This is not grossly disproportionate to the seriousness of the offense, nor does it constitute needless infliction of pain and suffering. Considering the manner in which Defendant killed the victim, a 27-year sentence for manslaughter does not shock the sense of justice. In light of these circumstances, the trial court did not abuse its discretion, and the 27-year sentence is not constitutionally excessive. This assignment is, therefore, without merit.
We review the record for patent error pursuant to La. C. Cr. P. art. 920, and State v. Oliveaux, 312 So.2d 337 (La.1975). We note that the trial court failed to rule upon Defendant's pro se motion for reconsideration of sentence, which was timely filed. At the sentencing hearing, counsel for Defendant made an oral motion for reconsideration of sentence, and the trial court initially denied the motion. Defense counsel then asked the trial court to reserve ruling on the motion until conducting a hearing. After asking the State if it was amenable to that request, the State indicated that it would be if such a motion for reconsideration was timely filed. The trial court reserved its ruling on the motion until a written motion is filed and Defendant's right to make a timely written motion for reconsideration of sentence. Within 30 days of sentencing, Defendant filed a pro se motion for reconsideration of sentence, wherein he alleged only that his sentence was excessive. The record contains no indication that the trial court ruled upon this motion.
According to La. C. Cr. P. art. 916(3), the trial court retains jurisdiction to "take other appropriate action pursuant to a properly made or filed motion to reconsider sentence" even after an order of appeal is entered. Further, La. C. Cr. P. art. 881.1(C) states that "the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of that sentence." In addition, no provision within the Code of Criminal Procedure prohibits an appellate court from reviewing a sentence for constitutional excessiveness in spite of the trial court's failure to rule on a motion to reconsider sentence. Further, an appellate court may review a sentence for constitutional excessiveness even if the defendant fails to file a motion to reconsider sentence. Therefore, this court may review Defendant's sentence for constitutional excessiveness in spite of the pending motion to reconsider sentence. Should the trial court later rule upon Defendant's motion to reconsider sentence, Defendant may seek appellate review of that decision pursuant to La. C. Cr. P. art. 914(B)(2).

CONCLUSION
For the foregoing reasons, Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although the trial court excluded Defendant's evidence regarding the victim's reputation for burglarizing homes in that area, the jury did hear this evidence through the testimony of Roy Jenkins.
[2] In Chambers and State v. Gremillion, the evidence was excluded as hearsay; and, in State v. Van Winkle, a variety of testimony was excluded as irrelevant.