968 So.2d 307 (2007)
STATE of Louisiana, Appellee
v.
Bertie HICKS, Appellant.
No. 42,427-KA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*309 David M. Newell, Homer, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, John W. Montgomery, C. Sherburne Sentell, III, Assistant District Attorneys for Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
WILLIAMS, J.
The defendant, Bertie Hicks, was charged by bill of information with manslaughter, a violation of LSA-R.S. 14:31. In exchange for the state's waiver of the minimum statutory sentence, the defendant pled guilty to manslaughter. The district court sentenced defendant to serve 40 years at hard labor without benefit of probation or suspension of sentence and denied his motion to reconsider sentence. Defendant appeals his conviction and sentence. *310 For the following reasons, defendant's conviction is affirmed, his sentence is amended and affirmed as amended.

FACTS
According to the facts of the pre-sentence investigation report prepared in this case, on November 14, 2005, the defendant was home alone with his seven-week-old daughter, Elizabeth Hicks. During the morning, defendant called his wife, Crystal Hicks, at work requesting that she come home because of an emergency. While en route to her home she was stopped by a police officer. Mrs. Hicks informed the officer that there was an emergency at her home, and he followed her there. Once they arrived at the house, the defendant told Mrs. Hicks that the baby was not breathing correctly.
The defendant reported that he had been giving the child a bath when water went in her nose and that she was having trouble breathing as a result. Both Mrs. Hicks and the officer observed the child lying on a couch and her breathing appeared fine. The officer left, and Mrs. Hicks waited another 20 to 30 minutes before returning to work. Mrs. Hicks later recalled that when she first arrived, the child seemed cold and pale, but by the time she left the baby's appearance had returned to normal. However, approximately ten minutes after Mrs. Hicks returned to work the defendant called again saying the child was not breathing normally, and his mother was on the way to pick them up. As she drove home the second time, Mrs. Hicks saw an ambulance and followed it to the hospital.
Detectives investigating the matter as a potential child abuse case interviewed the emergency room treating physician regarding the child's condition. A CT scan showed some areas of bleeding around the child's brain. The doctor reported that the condition is commonly associated with shaken baby syndrome. The child was transferred to Schumpert Medical Center in critical condition. On November 16, 2005, baby Elizabeth was declared brain dead.
The defendant was interviewed and informed the detectives that he had vigorously shaken the child on two occasions the day she was taken to the hospital. Additionally, the defendant informed the detectives that he struck the child's head against the bathtub when lifting her out of the water. The defendant stated that after his wife returned to work that day he went outside, leaving the baby unattended in the house for approximately 15 minutes. He stated that when he checked on the baby she was not moving and was having difficulty breathing, so he called his mother. Defendant said he did not initially seek medical treatment for the child because he was under the influence of drugs and believed the doctors would detect that fact. Both the defendant and his wife tested positive for marijuana.
Although the defendant was eventually arrested for first degree murder, he was charged with and pled guilty to manslaughter. Thereafter, the district court imposed the maximum sentence of 40 years at hard labor without benefits. Defendant's motion to reconsider sentence was denied.

DISCUSSION
The defendant contends the district court's imposition of the maximum sentence for his manslaughter conviction is excessive. Defendant argues that the court failed to properly consider the circumstances of the case, including the state's willingness to waive the mandatory minimum sentence and defendant's background.
*311 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57, 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Woods, 41,420 (La.App. 2d Cir.11/1/06), 942 So.2d 658. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. This is particularly true in cases where the offense involves violence upon a victim. State v. Black, 28,100 (La.App. 2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, the sentence imposed should not be set aside as excessive. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
Prior to imposing sentence in this case, the district court reviewed a pre-sentence investigation (PSI) report and heard an impact statement from a family member of the victim and a statement from defendant's mother. The court stated its belief that although this was a "very tough case," there was not any crime greater than taking the life of a helpless child and the harshest penalty was required. While not specifically stated during the sentencing hearing, the record shows that the district court was aware of the appropriate considerations necessary to tailor the sentence to this defendant, including his family history, his lack of prior criminal record, and his drug usage.
*312 Additionally, the PSI report refers to allegations made by the victim's maternal relatives that the defendant had physically abused the victim prior to her death. The allegations of abuse were also raised by the state during the argument on the motion to reconsider sentence. Even though any alleged previous abuse was not charged as criminal activity, the court could properly consider these allegations in determining the appropriate sentence for this defendant. State v. Jones, 31,569 (La.App. 2d Cir.12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2d Cir.10/29/97), 702 So.2d 40.
Considering the Article 894.1 sentencing guidelines, the record supports a finding that aggravating factors were present, since defendant's conduct manifested deliberate cruelty to the child victim and defendant knew or should have known that the victim was particularly vulnerable and incapable of resistance due to extreme youth.
In his appellate brief, the defendant argues that because others were present at the scene, they were in control of the situation and he should be relieved of "primary liability" for the baby's death. While the defendant alleges there were others whose actions could have intervened to prevent the death of the child, defendant refuses to acknowledge that he neither sought proper medical treatment for the child nor disclosed to his wife and the police officer that he had severely shaken the baby. The defendant's act of lying to those who initially attempted to ascertain the nature of the child's problems precluded the option of seeking medical attention at an earlier time. Only later did defendant admit his actions under extensive questioning by detectives.
After reviewing the record, we conclude that there is an adequate factual basis for the sentence imposed. The defendant, by his own admission, violently shook his baby daughter and failed to disclose the true nature of her injuries, thereby delaying treatment. The defendant's selfish and duplicitous conduct indicates that he intentionally inflicted the physical injury which caused the death of the young child. The maximum sentence imposed is neither grossly disproportionate to the seriousness of the offense committed nor shocking to the sense of justice. Thus, there is no showing that the district court abused its discretion in sentencing this defendant. Consequently, we cannot say that the sentence is constitutionally excessive. The assignment of error lacks merit.
Guilty Plea
The defendant contends his guilty plea was not knowing and voluntary. Defendant argues that he incorrectly believed that he had been charged with murder, that the charge would be reduced to manslaughter in exchange for his guilty plea and that he would receive a sentence of less than 10 years. The defendant further argues that he did not understand the charge to which he was pleading because the district court failed to inform him of the elements of the crime of manslaughter.
A valid guilty plea must be a free and voluntary choice by the defendant. A guilty plea will not be considered free and voluntary unless, at the very least, defendant was advised of his constitutional rights against self-incrimination, to a trial by jury and to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. Boykin, supra; State v. Keener, 41,246 (La.App. 2d Cir.8/23/06), 939 So.2d 510; State v. Morrison, 599 So.2d 455 (La.App. 2d Cir.1992).
*313 In addition, LSA-C.Cr.P. art. 556.1 provides that prior to accepting a guilty plea, the court must personally inform defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty and the maximum possible penalty. The test for the validity of a guilty plea does not depend upon whether or not the district court specifically informed the accused of every element of the offense. Rather, the defendant must establish that he lacked awareness of the essential nature of the offense to which he was pleading. State v. Forrest, 04-43 (La.App. 5th Cir.5/26/04), 876 So.2d 187. Violations of Article 556.1 that do not rise to the level of Boykin violations are subject to the harmless error analysis. State v. Ford, 02-1394, 02-1642 (La.App. 4th Cir.4/16/03), 846 So.2d 98, writ denied, 03-1401 (La.11/26/03), 860 So.2d 1132.
At the guilty plea hearing in the present case, after ascertaining that the defendant was able to read, write, and understand the English language, the district court advised defendant of his right to a jury trial, the right to confront witnesses, the right to remain silent, the right to bring witnesses by the compulsory process, and the right to appeal. Defendant stated that he understood the proceedings and wished to give up those rights. The court also informed defendant of the minimum and maximum penalties of the offense to which he was pleading guilty. In addition, the district court specifically advised the defendant that the state's willingness to waive the mandatory minimum sentence would not be the determining factor in deciding the sentence and that the court could impose a 40-year sentence.
Although the district court did not specifically inform the defendant of every element of the offense of manslaughter, the court noted that defendant's situation was governed by LSA-R.S. 14:31(B), which provides that if the victim of manslaughter was killed as a result of receiving a battery and was under the age of ten years, the offender shall be imprisoned without benefit of probation or suspension of sentence for not less than ten years. Notably, the defendant, who was represented by counsel at the time of his plea, failed to complain that he did not understand the charge against him. Thus, defendant has not established that he was unaware of the essential nature of the offense to which he was pleading. The record demonstrates that defendant was adequately advised of his constitutional rights and that his guilty plea was free and voluntary.
The defendant also alleges that his plea was improperly induced because he was erroneously informed that he was facing a murder charge. During the guilty plea hearing, the district court stated that defendant was "charged with murder. That's been reduced by the district attorney to manslaughter, which carries a penalty of up to 40 years at hard labor." Although the minutes of court indicate that initially there was a "tentative" charge of first degree murder in November 2005, the bill of information ultimately filed on April 17, 2006, charged defendant with manslaughter.
Contrary to defendant's contention, the district court's reference to a murder charge does not appear to have influenced his decision to plead guilty to manslaughter. The record indicates that defendant was present in court for arraignment on the charge of manslaughter. Additionally, the defendant had already decided to enter a plea of guilty to manslaughter prior to the court's mention of a murder charge at the hearing. Thus, defendant has not shown that absent the court's reference to a murder charge he likely would not have pled guilty. The assignment of error lacks merit.
*314 Assistance of Counsel
The defendant contends he did not receive effective assistance of counsel. Defendant argues that his attorney was negligent in convincing him to enter a plea of guilty without obtaining the state's agreement to a definite sentence and by advising the defendant that he would receive a sentence of less than ten years and avoid the risk of the death penalty.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court, where a full evidentiary hearing may be conducted under LSA-C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2d Cir.6/21/00), 764 So.2d 1164. The right of a defendant in a criminal proceeding to effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires defendant to establish that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the proceeding would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
The constitutional standard for effectiveness of counsel claims is the same in guilty plea cases as in cases which have gone to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); State v. Wry, supra. In Hill v. Lockhart, supra, the requirement of prejudice was interpreted to mean, in the guilty plea context, that but for counsel's unprofessional or erroneous advice, the defendant would have pled not guilty and elected to go to trial. State v. Wry, supra.
In the present case, defendant argues that at the plea hearing his attorney convinced him to plead guilty by making representations that the defendant would receive a sentence of less than ten years at hard labor. While such representations do not appear in the record, we note that the state indicated its willingness to waive the mandatory minimum sentence in exchange for defendant's guilty plea. Additionally, the defendant alleges that his counsel should not have recommended a guilty plea without obtaining an agreed sentencing cap.
Defendant's claims of ineffective assistance of counsel have never been argued to any court and at this point are mere assertions. The record is insufficient for this court to review the issue of ineffective assistance. The defendant's remedy is post-conviction relief wherein the quality of the attorney's performance can be fully developed and explored in an evidentiary hearing. Thus, the assignment of error is not properly before this court and we will defer the claim of ineffective assistance of counsel to post-conviction relief. State v. McGhee, 554 So.2d 145 (La.App. 2d Cir. 1989).
Error Patent
Upon review of the record, we note that the district court sentenced defendant to "forty years at hard labor without benefit of probation, suspension of sentence or probation." However, the minutes of court indicate that defendant *315 was denied parole eligibility. Although the sentencing provisions of LSA-R.S. 14:31(B) do not prohibit parole, we note that defendant was convicted of manslaughter, which is a crime of violence as defined in LSA-R.S. 14:2(B)(13). Pursuant to LSA-R.S. 15:574.4(B), a person convicted of a crime of violence shall serve at least 85% of the sentence imposed before being eligible for parole. Thus, the sentence will be amended to reflect that defendant is required to serve 85% of his sentence prior to eligibility for parole.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. Defendant's sentence is hereby amended to reflect that he is required to serve 85% of his sentence prior to eligibility for parole.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.