WILLIAMS, J.
| defendant, Misty D. Woods was charged by bill of indictment with second degree murder, in violation of LSA-R.S. 14:30.1. Pursuant to a plea agreement, she pled guilty to manslaughter and was sentenced to serve 20 years at hard labor without benefit of probation or suspension of sentence. Defendant appeals, challenging her sentence as constitutionally excessive. For the following reasons, we affirm.
FACTS
On August 7, 2009, at approximately 2:40 a.m., paramedics and deputies from the Ouachita Parish Sheriffs Office responded to a call regarding a young child who was found unresponsive at the residence of the defendant, Misty D. Woods. The child was the defendant’s two-year-old daughter, Amity Cantrell. Paramedics transported Amity to Glenwood Regional Medical Center; however, attempts to resuscitate her were unsuccessful.
*710 The defendant initially told the deputies that she believed that her use of pesticides, i. e., roach spray, in the home had contributed to Amity’s death. However, the toxicological testing detected no pesticides, alcohol or drugs in the child’s body; an autopsy revealed that Amity died of “asphyxia with multiple blunt force injuries.” Subsequently, the defendant admitted that she had used cocaine and drank alcohol on the day of Amity’s death and stated that she believed she “rolled over” on the child while they were both asleep on the sofa. The defendant also stated that she later awoke and found Amity unresponsive.
The defendant was not immediately arrested for causing Amity’s 12death. However, at the time of the child’s death, the defendant was on probation for possession of methamphetamine. In January 2010, she was arrested for violating her probation, which was later revoked.
On May 13, 2010, a Ouachita Parish grand jury returned an indictment, charging the defendant with the second degree murder of Amity, in violation of LSA-R.S. 14:30.1. On July 5, 2011, the defendant waived her rights and pled guilty to the reduced charge of manslaughter. The state did not present an agreement to a sentence recommendation.
The factual basis for the plea was stated on the record at the guilty plea hearing. During the hearing, the defendant described her conduct on the night of Amity’s death as “negligent.” Counsel for the defendant stated that the defendant believed she “rolled over on [Amity] while they were both asleep on the sofa and that resulted in the asphyxia.” Counsel also stated that the defendant’s use of cocaine, alcohol and prescription medications led “to a situation in which her care of [Amity] was so negligent and so deficient that it caused her death.” Further, defense counsel stated:
The state, I believe, would allege that the multiple blunt force injuries while not the cause of death would be indicative of at the very least simple battery resulting in the death of the child. A number of the injuries were to the child’s face, some to the buttocks and most to the face. There were also sub-galeal contusions and cerebral edema showing injuries to the face and head.
The state agreed to the latter assertions made by defense counsel. Additionally, the state pointed out that in an oral statement to the investigating police officers, the defendant told the officers that she had | ¡¡experienced a “terrible dream,” and thought she was having a fight with her “drug dealer.” She stated that she “awoke to find herself committing batteries on her child.”
The court accepted the defendant’s guilty plea. As part of the plea agreement, a presentence investigation report was ordered.
A sentencing hearing was held on November 21, 2011. The trial court sentenced the defendant to serve 20 years at hard labor without benefit of probation or suspension of sentence; the sentence was ordered to be served consecutively to her probation violation, with credit for time served.
Thereafter, the defendant filed a motion to reconsider sentence. The defendant argued that the sentence was excessive and the trial court failed to give sufficient weight to the fact that she was suffering from an addiction which she had unsuccessfully attempted to address. The defendant also claimed that her actions were not intentional or malicious and that her sentence was disproportionate to the sentences of other similarly situated defendants. Additionally, the defendant urged that if her sentence is to be served consec *711 utively to her probation revocation sentence, then she will not receive credit for time served.
On April 17, 2011, a hearing on the motion to reconsider sentence was held. The trial court granted the motion in part, and ordered the sentence to run concurrently with the defendant’s probation revocation sentence (from May 14, 2010 forward), to ensure that the defendant received appropriate credit for time served. The court took the remaining |4claims in the motion to reconsider sentence under advisement. Subsequently, the court denied the remaining claims.
The defendant appeals.
DISCUSSION
The defendant challenges her sentence of 20 years at hard labor without benefit of probation or suspension of sentence as constitutionally excessive. She argues that the sentence makes no contribution to justice, is not necessary to protect society, and is nothing more than a needless imposition of pain and suffering. The defendant also argues that while the trial court noted several aggravating factors, the court focused on the fact that she had a substance abuse problem and had relapsed.
According to the defendant, she made a mistake, which resulted in the death of her child, and she will pay a price for Amity’s death every day. She notes that she has voluntarily relinquished the rights to her other two children, she is sincerely remorseful, and that she has fought to change her life and deal with her addiction. Moreover, the defendant notes her participation in rehabilitation programs, her periods of sobriety, and the fact that she was married to an abusive man, who also had substance abuse problems. She argues that she is not a “hardened criminal,” but a recovering addict who has made great strides in her recovery and wants to help others. Furthermore, the defendant maintains that it will cost the taxpayers of Louisiana approximately $20,000 per year to house her, and that amount, for a period of 20 years, is grossly disproportionate to this offense. Additionally, the defendant noted four cases in which mothers who caused j Bthe death of their child received a sentence that amounted to them serving 10 years at hard labor.[1]
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance *712 of the criteria set forth in LSA-C.O.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance, so long as the record reflects that he or she adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or 1 (¡mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267.
The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
|7A trial court has broad discretion to sentence within the statutory limits. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641; State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158. Absent a showing of manifest abuse of discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, supra. Where a defendant has pled guilty to an offense which does not adequately describe his or her conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792; State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.
LSA-R.S. 14:31(B) provides that a person convicted of manslaughter shall be imprisoned at hard labor for not more than 40 years. However, if the victim killed was under the age of 10 years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than 10 years, nor more than 40 years. See State v. Jones, 1999-2207 (La.1/29/01), 778 So.2d 1131.
In State v. Jones, supra, the defendant was initially charged with first degree murder for his failure to seek medical attention for his 22-month-old daughter who was repeatedly abused by her mother. He pled guilty to manslaughter and was sentenced to serve 20 years at hard labor. The court of appeal found that the sen *713 tence was excessive; however, the Supreme |8Court reversed and remanded the matter to the trial court for execution of the sentence. The court stated:
Despite his guilty plea to manslaughter, respondent argued in the court of appeal that[,] for purposes of evaluating the severity of the punishment imposed by the trial court[,] his crime was more appropriately viewed as negligent homicide, a much less serious offense carrying a maximum sentence of five years imprisonment at hard labor. La.R.S. 14:32. However, the legislature has recently added Second Degree Cruelty to Juveniles to the Criminal Code, La. R.S. 14:93.2.3,1999 La. Acts 191, defining the offense as “the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child.” The crime is punishable by a maximum term of imprisonment of 40 years at hard labor, the same range provided for the crime of manslaughter. This recent addition to the Criminal Code reflects the seriousness with which the legislature requires courts to consider the criminal neglect of children which produces serious bodily injury or significant neurological consequences even when that conduct does not bring about the death of the child.
Id., at 1134. The court pointed out that while the defendant did not inflict the blows that resulted in the child’s death, his decision not to seek medical attention for the child contributed to the crisis which ultimately caused the death.
In State v. Hicks, 42,427 (La.App.2d Cir.10/24/07), 968 So.2d 307, the defendant was initially charged with first degree murder in the death of his seven-week-old daughter, who died as a result of being violently shaken. He pled guilty to manslaughter and was sentenced to 40 years at hard labor. This Court upheld the sentence, finding that there was an adequate factual basis for the sentence.
|9In the instant case, at the sentencing hearing, the defendant stated that during the months between Amity’s death and her arrest, she voluntarily participated in an outpatient rehabilitation program and was cooperating with Children’s Services. She also admitted that she had voluntarily terminated her parental rights with regard to her two other children. Further, the defendant admitted that she smoked at least one rock of crack cocaine and drank 8 to 12 beers on the day of Amity’s death.[2]
Prior to imposing the sentence, the trial court considered the circumstances of the offense, the information in the presentence investigation report, the “numerous certificates” submitted on behalf of the defendant, and the factors set forth in LSA-C.Cr.P. art. 894.1. In reviewing the information in the presentence investigation report, the court noted that the defendant had informed the investigator that she did not really know what happened to Amity because she was too intoxicated from alcohol and drugs at the time. The defendant initially stated that she lay down on the couch with Amity, went to sleep, and when she woke up, Amity was unresponsive. In reference to the injuries noted on the autopsy report, the defendant stated that Amity had fallen off the kitchen table trying to get a kitten. Also, the defendant *714 admitted that she had cocaine in her system when Amity was born and that she occasionally used drugs from the time Amity was born until this incident. The court also stated it gave “little to ho weight” to a statement from Steven Cantrell, Amity’s father, because he |)0provided no support to the defendant or the children, he is incarcerated on drug charges and his parental rights to the other children were involuntarily terminated.[3]
In reviewing the defendant’s criminal history, the court noted that the defendant is a second-felony offender, having been previously convicted of possession of methamphetamine. The court also noted that in 2004, the defendant was eonvicted of driving while intoxicated and child endangerment in the state of Georgia. Referring to the prior convictions, the court stated that the defendant had two opportunities, two “wake up calls,” to do something about her substance abuse before “something happened” to her children.
Further, the trial court reviewed the guidelines set forth in LSA-C.Cr.P. art. 894.1. The court stated:
Now, under Article 894.1(B) it says— subparagraph one says the offender’s conduct during the commission of the offense manifested deliberate cruelty to the victim. [I] can’t say based on what I know about the case that you were deliberately manifestly cruel to your daughter, Amity, in terms of when she died. That[,] however[,] does not excuse your conduct on that day leading up to what happened, nor the fact that you ignored a couple of wakeup calls[,] so to speak[,] given to you several years prior to that in terms of do something about your substance abuse problem.
* * *
The offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth[J This little girl could not take care of herself. She was dependent on you [t]o take care of her. And you should have known that getting drunk and smoking crack would put her in a | nsituation where she would be particularly vulnerable to being hurt or be — if—if something went wrong she would not be capable of resisting it or to take care of herself.
The court further found that the defendant knowingly created a risk of death or great bodily harm to more than one person because her eight-year-old daughter was also in the house on the day of the incident. The court noted that the defendant was on probation for a drug conviction at the time this incident occurred, which the court concluded was particularly aggravating because her drug and alcohol use “greatly facilitated” Amity’s death. The court went on to state:
[I] am not willing to accept the fact that you did not contemplate that your conduct, your criminal conduct in smoking cocaine, would cause or threaten serious harm. You knew or should have known that and I’m not willing to accept the fact that you didn’t think about it.
[[Image here]]
The court also noted the defendant’s criminal history and stated, “I cannot say that you have a history of law abiding life [sic] for a substantial period of time before the commission of this offense[.]”
Moreover, the court acknowledged that it had received multiple certificates indicating that the defendant had addressed her substance abuse problem during her *715 incarceration. The court also noted that it had received many letters from various program leaders which addressed the defendant’s participation and performance in glowing terms.
Nevertheless, the court noted that the defendant’s substance abuse caused Amity’s death and that the defendant had other opportunities to address her problem prior to the death of her child. The court stated that the | ^defendant’s incarceration would not cause excessive hardship to her or any of her dependents. As a mitigating factor, the court stated that the defendant had taken her other two children out of harm’s way by relinquishing custody of them, and her parents were in the process of adopting them.
As stated above, the sentencing range for manslaughter is not less than 10 years, nor more than 40 years at hard labor without the benefit of probation or suspension of sentence. The defendant was sentenced to serve 20 years at hard labor without the benefit of probation or suspension of sentence, with credit for time served.
After reviewing the record in its entirety, we find that there is an adequate factual basis for the sentence imposed. The defendant, by her own admission, drank 8-12 beers and smoked at least one rock of crack cocaine on the night of Amity’s death. The defendant was the only adult in the house at the time and was, therefore, solely responsible for the care of two of her young children. She continued to express her uncertainty with regard to the events leading up to Amity’s death. In one statement, she stated that she believed that she may have rolled over on Amity while she slept. In another statement, she told police officers that she had a dream that she and her drug dealer were fighting, and she awoke to find herself battering Amity. While there was no evidence to show that the defendant intentionally inflicted the physical injuries, the defendant has admitted that her actions that night resulted in the death of her daughter.
We find that the trial court adequately considered the appropriate aggravating and mitigating factors set forth in LSA-C.Cr.P. art. 894.1. 11sMoreover, the defendant substantially benefitted from the plea agreement and reduced sentence exposure, as she was initially charged with second degree murder, for which the mandatory sentence is life in prison without the benefit of probation, parole or suspension of sentence. The sentence imposed, 20 years at hard labor, is neither grossly disproportionate to the seriousness of the offense committed nor shocking to the sense of justice. Thus, there is no showing that the trial court abused its discretion in sentencing this defendant. Consequently, we cannot say that the defendant’s sentence is constitutionally excessive. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AFFIRMED; SENTENCE AFFIRMED.

. The cases cited by the defendant are as follows:
(1) Jessica Tensley,—State v. Tensley, 41,726 (La.App.2d Cir.4/4/07), 955 So.2d 227. Tensley was convicted of second degree murder for her failure to seek medical help for her child after the child was beaten by her boyfriend. This court reversed her conviction; on remand, she pled guilty to manslaughter and was sentenced to 10 years at hard labor.
(2) Ashley Johnson — 4th Judicial District Court Docket No. 09-F1034. Johnson delivered a child at home; subsequently, the child died as a result of multiple stab wounds and skull fractures. Johnson was sentenced to 20 years at hard labor, but 10 years was suspended.
(3) Geneva Mott — 4th Judicial District Court Docket No. 07-F0018. Mott failed to seek medical attention for her child who later died of severe blunt trauma to the skull. Mott was initially charged with second degree murder, but pled guilty to second degree cruelty to a juvenile and was sentenced to 10 years at hard labor.
(4) Karla Hooper — 4th Judicial District Court Docket No. 06-F2183. Hooper’s child died of brain injuries; there was evidence of past brain trauma, and the father accused Hooper of shaking the baby violently. Hooper was initially charged with second degree murder, but pled guilty to second degree cruelty to a juvenile; she was sentenced to 20 years, but 10 years was suspended.

. The trial court noted that a drug test administered to the defendant on the morning of Amity’s death showed high levels of cocaine in her system. According to the trial court, this information indicated that the defendant had smoked "significantly more" than one rock of crack cocaine.

. Steven Cantrell was contacted by telephone by the presentence investigator. Cantrell described the defendant as a drug addict and a liar, and stated that "she should serve the maximum sentence."