989 So.2d 259 (2008)
STATE of Louisiana, Appellee
v.
Edward Eugene ATES, Jr., Appellant.
No. 43,327-KA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*260 Lavalle B. Salomon, Monroe, for Appellant.
Robert W. Levy, District Attorney, Paul R. Knight, Emma J. Devillier, Assistant District Attorneys, Terri R. Lacy, Office of Attorney General, for Appellee.
*261 Before WILLIAMS, STEWART and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Third Judicial District Court, Parish of Union, State of Louisiana. Edward Eugene Ates, Jr. was convicted as charged by a jury for the illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing or attempting to commit a crime of violence, a violation of La. R.S. 14:94(A) and (F). He was sentenced to 16 years' imprisonment at hard labor without benefits, along with a fine of $10,000.00, costs and restitution. Ates now appeals. For the following reasons, his conviction and sentence are affirmed.

FACTS
In the early evening of December 20, 2004, in Union Parish, Louisiana, Linda Baldwin was driving her family-owned pickup truck which was normally driven by her teen-aged son. She stopped the truck across from a trailer park, where she observed the defendant, Edward Ates, and his cousin, Tommy Ates, talking. After pulling onto the highway, Baldwin heard an "explosion," smelled gun powder, and felt stinging in her leg. She pulled over to determine what had happened, and from inspecting the rear of the truck and its contents, she quickly deduced that Edward Ates had shot at her, thinking that her son was driving the truck.[1] Baldwin, both scared and furious, drove into Bernice, Louisiana where she reported the incident, after confronting both Edward Ates and Tommy Ates regarding the matter.
Edward Ates was questioned at the Bernice Police Department the following day. After being advised of and waiving his Miranda rights, he gave statements to the police. Edward Ates was arrested and subsequently indicted for illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing or attempting to commit a crime of violence. After a jury trial, at which the defense presented no evidence or witnesses, the 12-person jury unanimously found Ates guilty as charged. This appeal ensued.

DISCUSSION

Sufficiency of the Evidence
In his first assignment of error, Ates argues that the evidence presented against him was insufficient to prove his guilt beyond a reasonable doubt. Specifically, Ates argues that the state failed to show that he intentionally endangered human life, noting that in his taped statement, he stated that he merely shot into the air and never intended to strike the vehicle or its occupant. Ates also contends that the element of the crime of violence, aggravated assault, was not proved, noting that the victim did not realize that a shot had been fired until after the incident. Because there was no contemporaneous knowledge of an aggravated assault by the victim, Ates contends that the state failed to prove one of the essential elements of the crime.
Although the record does not reflect that Ates filed a motion for post verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Henson, 38,820 (La.App. 2d Cir.09/22/04), 882 So.2d 670.
The standard of appellate review for a sufficiency of the evidence claim is whether, *262 after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442; State v. Linn, 43,006 (La.App. 2d Cir.02/13/08), 975 So.2d 771. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App. 2d Cir.08/15/07), 963 So.2d 497.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2d Cir.05/09/07), 956 So.2d 769.
Initially, our review of the record shows that the indictment cited the charge against Ates as a violation of La. R.S. 14:94(F) and not the general offense provision of the statute contained in subsection (A). Whereas we observe that the indictment informed Ates of the statutory basis of the offense and otherwise adequately set forth the offense, we note, however, that Subsection (F) of the statute pertains only to the enhanced penalty that may be imposed upon whoever commits the crime of illegal use of a weapon or dangerous instrumentality by discharging a firearm while committing or attempting to commit a crime of violence. Here, the sufficiency of the indictment was not questioned by Ates prior to or at trial nor on appeal, and we note that the indictment was not so defective as to be insufficient. See State v. Held, 32,610 (La.App. 2nd Cir.12/10/99), 748 So.2d 608. So considering, we conclude that this error patent in the indictment was immaterial and certainly not prejudicial to this defendant.
Louisiana R.S. 14:94(A) and (F), regarding illegal use of weapons or dangerous *263 instrumentalities, provides in pertinent part:
A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
* * *
F. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence . . . , shall be imprisoned at hard labor for not less then ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence. . . .
The offense of illegal use of a weapon requires proof of either general intent or criminal negligence. State v. Walker, 26,026 (La.App. 2d Cir.05/04/94), 637 So.2d 583, writ denied, XXXX-XXXX (La.09/30/94), 642 So.2d 868. Additionally, Ates was charged under subsection (F), which required further proof that he committed the act while committing or attempting to commit a crime of violence. Here, the crime of violence was aggravated assault, which is an assault committed with a dangerous weapon. La. R.S. 14:2(B)(7) and La. R.S. 14:37. Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery. La. R.S. 14:36. A battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another. La. R.S. 14:33.
In the case sub judice, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt as per the Jackson standard. Clearly the physical evidence and witness testimony was sufficient to find Ates guilty of the offense for which he was charged.
At trial, Ates' wife, Sandra Ates, testified. She described her prior sexual relationship with the Baldwins' minor son, providing motive for Ates' actions. She also confirmed that on the night of the crime she was in the truck with Ates and their three children. Sandra recounted that Ates' cousin pulled up behind them in his green truck, and Ates got out of his truck, telling her and the kids to stay in the truck. They heard a gunshot, and she looked back and saw Ates hand a "long gun" to his cousin. Sandra testified that she could tell by the sound that the gunshot had hit something. When Ates got into their truck, Sandra asked him what he had done, and she and the kids began to cry. She recalled that Ates told her to "sit down, shut up and everything would be okay," and that he "just shot the back glass out" of the Baldwins' truck. Sandra saw the Baldwins' truck stop on the side of the road, but she did not see anyone get out.
Linda Baldwin, the actual victim of the crime, also testified. According to Baldwin, on the evening of the shooting she was driving the pickup truck primarily driven by her son, and she was in the process of looking for her dog and dumping some trash. The truck's windows had a very dark tint and appeared to be black at night. She stopped at the stop sign at the intersection of L. Albritton Road and Highway 167. Directly across from where she was stopped was Cannon Trailer Park, where Ates lived. Baldwin testified that *264 she waited for the heavy traffic to clear before she pulled out onto Highway 167, because she wanted to drive slowly to look for her dog. She recalled noticing a green truck parked at the trailer park, which she recognized as the truck owned by the defendant's cousin, Tommy Ates. It was parked behind the defendant's white truck, and Edward Ates was standing outside the driver's side window of the green truck, talking to the driver, Tommy Ates. Baldwin also watched Sandra Ates get into the defendant's white truck. Their children were already seated inside.
According to Baldwin, shortly after pulling out of the intersection onto Highway 167 headed south, she heard an explosion and smelled gun powder. She recalled thinking that one of her tires had blown out, so she pulled over onto the right side of the highway, but her tires appeared to be fine. Baldwin then speculated that perhaps the gun that was kept in the truck's storage box might have gone off, and after checking she saw no evidence that it had fired. Baldwin then moved her truck off of the highway and used a flashlight to look in the bed of the truck. There she saw a broken plastic cup and noticed holes in some rubber boots. Her eyes followed an imaginary line from the cup and holes in the boots which led to a hole in the back of the bed of the truck on the far left side. Further investigation revealed that a bullet had traveled from the far left corner of the truck bed through the molding and into the driver's side door. Baldwin testified that she quickly realized that someone shot at the truck she was driving and became scared and angry. She suspected that Ates had fired the shot because of the sexual relationship that occurred between her minor son, the usual driver of the truck, and Sandra Ates during the previous summer.
Afraid for her life, Baldwin recounted that she left the scene and drove into Bernice to report the crime. As she drove back past the trailer park, she noted that both trucks were gone; however, when she arrived in Bernice, she saw the defendant's truck parked in front of the post office. Baldwin testified that Sandra Ates and the children were inside the truck and the defendant was coming out of the post office. Baldwin, still scared and upset, immediately confronted both the defendant and his cousin, at their respective trucks in separate incidents, informing them that she was the driver of the truck and not her child, whom she believed to be the intended victim. Baldwin then reported the shooting to the authorities.
Sergeant Nick Halley of the Union Parish Sheriff's Office also testified. He stated that Ates was questioned at the Bernice Police Department the next day, and after being advised of and waiving his Miranda rights, Ates gave statements to the police. Detective David Walsworth, also of the Union Parish Sheriff's Office, testified that Ates admitted, in a recorded statement, to firing one shot in the direction of Baldwin's truck. Ates admitted to the officers that he saw the Baldwins' truck drive slowly past and wrongly assumed that her son was the driver (he could not see the actual driver due to the dark tint of the windows). Ates admitted to Det. Walsworth that he took his cousin's Marlin rifle and fired one shot "over the top" of Baldwin's truck. He claimed that he was not aiming at the truck and did not think he had hit it. His intent was to scare the son away.
It was later determined that the bullet removed from Baldwin's truck door had the same class characteristics as the reference bullet fired from the .30-30 caliber Marlin rifle allegedly used by Ates, but did not retain sufficient individual markings for a positive identification.
*265 Here, the record clearly supports the finding that the state presented sufficient evidence to support Ates' conviction. As discussed herein, the jury heard testimony from the victim of the crime, Linda Baldwin, as well as a witness to it, Sandra Ates. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the victim's testimony, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, supra. Moreover, Baldwin's testimony was corroborated in part by the testimony of Sandra Ates and was further supported by the physical evidence. The appellate court is not in the position to assess the credibility of witnesses or reweigh evidence. State v. Smith, supra. Furthermore, Ates' contention that he lacked the requisite intent is baseless. He admitted to firing the weapon at the truck, but only with the intent of scaring its driver, which he did while using a dangerous weapon. Clearly, his actions fall within the definition of aggravated assault. So considering, we conclude that the evidence against Ates was clearly sufficient to convict him of the offense of illegal use of weapons or dangerous instrumentalities while committing or attempting to commit a crime. This assignment of error is without merit.

Sentencing
Ates also brings several assignments of error related to his sentence, arguing that:
 the sentence imposed is excessive and disproportionate and a needless imposition of pain and suffering and therefore a violation of Article I of the Louisiana Constitution of 1974, as amended;
 the trial court did not adequately consider mitigating circumstances in this matter;
 the trial court failed to articulate adequate reasons which would serve as a factual basis for the sentence imposed; and,
 the trial court failed to adequately consider alternative and/or significantly less harsh sentence.
Specifically, Ates contends that his sentence is excessive on its face and asserts that a substantially lesser sentence would have been sufficient to address this offense. He also claims that the trial court's recitation of the factors it considered in his sentencing did not present sufficient information to determine the appropriateness and individualization of the sentence imposed. Ates particularly points out that the trial court did not address his good work history and that he appeared to be respected in the community prior to this offense. He also argues that 6 years of his sentence (the portion above the 10-year minimum) serves no useful purpose, and the sentence approaches the maximum, which is ordinarily reserved for the worst offenders. We disagree.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show, as it does in the case sub judice, that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890, writ denied XXXX-XXXX (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, *266 remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.01/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.03/11/05), 896 So.2d 57 and 2004-2380 (La.06/03/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.09/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.01/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2d Cir.01/24/07), 948 So.2d 379.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Hardy, 39,233 (La.App. 2d Cir.01/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 1995-2784 (La.05/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
The legislature's choice of punishment for discharging a firearm while committing a crime of violence has been held as not unreasonable and, instead, is rationally related to the protection of public safety. See State v. Walker, supra.
In the instant case, the record reflects that the trial court took great care and gave much consideration to all of the pertinent factors in tailoring this sentence to this particular defendant and this serious offense. Before sentencing, the trial court noted Ates' age, his first offender status, the serious nature of the crime, and that the initial charge was attempted first degree murder. The trial court recapitulated that it had reviewed the information contained in Ates' presentence investigation report and the victim impact statements of both Linda Baldwin and her husband. It also discussed in detail the facts of the case and applicable provisions of La. C. Cr. P. art. 894.1. The trial court noted that the defendant's "one act of stupidity" had resulted in extraordinary circumstances and a negative impact on the defendant's own family in addition to the victims. It observed that Ates' intended victim was a minor child to whom society owes a higher degree of protection. The trial court considered that the penalty range for the offense was 10 to 20 years' imprisonment at hard labor without benefits, but that the instant crime deserved neither the minimum *267 nor the maximum punishment. At the sentencing proceeding, Ates made his only apology to the victim, but the trial court stated that Ates' lack of remorse and contrition prior to the sentencing hearing weighed against him, as did the fact that he committed the crime in front of his own children. The trial court acknowledged that the crime was not premeditated over a long period of time, but was also more than a "knee jerk reaction"Ates had the opportunity to reflect upon what he was about to do.
We agree with the trial court's reasoning. In a purely vengeful act, this 30-year-old defendant fired a high-powered rifle at a vehicle he thought was driven by a minor child. He did so in front of his own minor children, and expressed no remorse or emotion for his actions until his sentencing hearing. His actions could have easily resulted in horrible consequencesinjury or death to Linda Baldwin or even to an unrelated bystander. The courts cannot treat lightly such unrestrained, violent behavior and complete disregard for the rule of law in a civilized society. When Ates' crime and punishment are viewed in light of the harm done to society by such senseless violence, his 16-year sentence does not shock the sense of justice. So considering, we find the sentence, although weighing slightly on the high end of the sentencing range, was within the trial court's discretion and appropriate.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Edward Eugene Ates are affirmed.
AFFIRMED.
NOTES
[1] At Edward Ates' trial, Linda Baldwin testified that Sandra Ates, the defendant's wife, had a sexual relationship with the Baldwins' 16-year-old son the previous summer. Sandra Ates was ultimately charged with carnal knowledge of a juvenile, and the case against her was still pending during her husband's trial.