LOLLEY, J.
|2This criminal appeal by Jarvis Edwards arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. Following a bench trial Edwards was convicted of forcible rape, a violation of La. R.S. 14:42.1. Thereafter, he was charged by bill of information as a third felony offender. Edwards pled guilty to being a second felony offender and was sentenced to 32½ years’ imprisonment at hard labor with the first two years to be served without the benefit of probation, parole, or suspension of sentence. A timely motion for reconsideration of sentence was denied and this appeal ensued. For the following reasons, we affirm Edwards’ conviction and sentence.
Facts
N.O.[1] and the defendant, Edwards, were both Southern University students who met on campus where they spoke on several occasions. At some point, Edwards gave N.O. his telephone number. During their ^conversations, N.O. and Edwards had discussed N.O. helping him with some homework. On October 15, 2007, *347 N.O. went to Edwards’ home, where the incident that led to this crime occurred. When N.O. arrived at his home, he was cooking in the kitchen and invited N.O. to go into his bedroom where his television was located and where they could work on the homework assignments.
N.O. went into the bedroom where she began working on the school assignments. After eating dinner and watching television, the sexual contact between N.O. and Edwards occurred in his bedroom. After-wards, N.O. got up, gathered her clothing and left the house. N.O. called several friends as she was leaving Edwards’ house, and she eventually went to the home of a friend who took her to the hospital. At the hospital, a sexual assault examination was performed on N.O., and she reported the incident to Detective Paula Moreno of the Shreveport Police Department sex crime unit.
After an investigation, Edwards was arrested and charged with forcible rape. Following a bench trial, he was convicted as charged. After a habitual offender adjudication, Edwards was sentenced as a second felony offender to 32½ years’ imprisonment at hard labor with the first two years to be served without the benefit of probation, parole, or suspension of sentence. The instant appeal by Edwards ensued.
RDISCUSSION
In his first assignment of error, Edwards argues that the state presented insufficient evidence to convict him of forcible rape. Specifically, Edwards contends that the state did not prove that force was used during the commission of the offense in that the victim had no visible injuries and was voluntarily at his residence. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36,137 (La.App.2d Cir.08/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.09/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court | r,accords great deference to the fact finder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
Louisiana R.S. 14:42.1 provides, in part: A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other *348 controlled dangerous substance administered by the offender and without the knowledge of the victim.
During the bench trial, N.O. testified she met the defendant in the hall outside one of her classes, and they had two or three brief conversations before he gave her his telephone number. N.O. and Edwards had a few telephone conversations, and one evening while they were talking, Edwards invited N.O. to his home for dinner and to do some homework. She accepted the invitation and on October 15, 2007, went to his home. N.O. stated that the majority of the time, she was in his bedroom working on his homework | fiand talking on the telephone to her best friend while Edwards cooked their dinner.
N.O. testified that once the dinner was prepared, she ate in Edwards’ bedroom while he ate in the living room area. After eating, N.O. moved about the apartment mainly talking on the telephone to her friend before she went to Edwards’ bedroom again and began watching television. According to N.O., it was at that point that Edwards entered the room and tried to kiss her, but she stopped him. She related that Edwards continued to try to kiss her, and he unzipped her pants and tried to pull them down while she was holding onto them telling him to stop. N.O. explained that Edwards merely laughed at her resistance.
N.O. testified that Edwards was able to pull her pants down, and he inserted his fingers into her vagina. She struggled to keep Edwards from removing her panties, but she could not stop him. Edwards kissed N.O. on her ear while she continued to tell him to stop and tried to push him off of her. According to N.O., Edwards again laughed and told her that she was not stronger than him. N.O. explained how she continued to struggle with Edwards-she scratched him on his back and hit him in his chest and face. At some point, Edwards told N.O. that she better stop hitting him, and N.O. 1 testified “that’s when I stopped because I got scared [.] ” N.O. recalled that her “resistance” lasted about 30 minutes.
N.O. described how Edwards penetrated her vagina, against her will, with his penis, which lasted for about one minute. N.O. did not believe that Edwards ejaculated inside her. Once Edwards finally stopped, he asked N.O. what was wrong and if someone had done something to her. N.O. described that Edwards said she was crazy. Once Edwards got off her she jumped up and grabbed her things. N.O. noticed that a bracelet she had worn had broken and fallen from her wrist and there was a scratch across N.O.’s wrist where the bracelet had broken. N.O. picked up the bracelet before she left the house.
After midnight of that same evening, a friend took N.O. to the emergency room at LSUHSC, where she spoke with several officers and reported the attack. At the E.R., she was given a physical examination, including a vaginal examination, swabs of the area on her wrist as well as scrapings from under her fingernails. N.O. testified that she later learned the tests conducted at the hospital for gonorrhea and chlamydia, sexually transmitted diseases (“STDs”), were positive; however, she stated that she did not have any knowledge of having been infected prior to her sexual |Rcontact with Edwards. That same night, N.O. spoke with Detective Moreno, to whom she later gave a recorded interview.
Betty Farmer, a Sexual Assault Nurse Examiner (“SANE”), examined N.O. and also testified at the trial. Farmer described examining N.O. that night at the emergency room. Farmer testified that N.O. provided her some details of the assault, which details were consistent with *349 the victim’s trial testimony. Farmer testified that she took hair samples, oral swabs, fingernail swabs, and conducted a vaginal examination that included obtaining secretions from inside N.O.’s vaginal vault. Farmer noted that there was a scratch on N.O.’s inner right wrist, that there was a large amount of white secretion in the vagina vault and that the cervix was red. Farmer found N.O. to be “a little tense, anxious” and quiet during the examination.
Lauren Airhood, a forensic scientist with the North Louisiana Crime Lab was accepted by the court as an expert in DNA analysis and testing. From the swabs submitted from the rape kit as well as reference samples obtained from N.O. and Edwards, Airhood found that the swab from N.O.’s right breast contained a mixture of two DNA profiles (a major and a minor). She stated that Edwards could not be excluded as a major contributor in the mixture, and the probability of finding the same DNA profile from a randomly selected individual other than Edwards was approximately one in [ fl50.8 quadrillion. The swab from N.O.’s ear (where he had kissed her) showed that Edwards and N.O. could not be excluded as donors, and that the defendant was 388 trillion times more likely than any other person to be a contributor along with N.O. The swab from N.O.’s left breast excluded 99 percent of the population, but Edwards and N.O. could not be excluded as donors to the mixture. The testing on N.O.’s vaginal washings obtained during the rape kit examination were consistent with Edwards’ DNA profile. Finally, Airhood testified that with Y-chromosome testing, Edwards and his paternal lineage could not be excluded as contributors of the DNA samples.
Detective Paula Moreno testified that she was the lead detective in the case. Detective Moreno met with N.O. at the hospital to get basic information about the complaint and later scheduled a formal interview for October 24, 2010. The information provided to Det. Moreno by the victim was essentially the same as her trial testimony. Detective Moreno testified that she attempted to identify a suspect after receiving information from the victim. Detective Moreno prepared a photographic lineup, and the victim positively identified Edwards. Detective Moreno recalled that she previously investigated Edwards for a case in 2001 that led to a conviction for sexual battery. Because of the allegation of the rape and the subsequent discovery that Edwards had not registered as a sex offender, Det. Moreno forwarded 110the case to the district attorney’s office for review. Edwards was interviewed by Det. Moreno after his arrest, during which Edwards denied having sex with N.O. or penetrating her digitally.
Edwards testified on his own behalf. He acknowledged having two previous convictions-possession of stolen things and sexual battery, which had been reduced from a forcible rape charge. Regarding that conviction, Edwards denied that he did anything but have consensual sex with his victim, but that he pled guilty to the reduced charge because he was threatened by the victim’s family and he was scared.
Edwards’ version of events matches pretty closely to the victim’s, until the point of taking her pants off. Whereas N.O. testified that Edwards forcibly removed her pants, Edwards testified that he asked N.O. if she wanted to get comfortable and if he could remove her pants. Edwards described that he removed N.O.’s pants “gently and precisely” before getting into the bed.
Edwards testified that he then took off his robe and jean shorts leaving his boxers on while they sat on the bed and watched television. Edwards claimed to have start *350 ed kissing N.O. on her neck and chest, and what he characterized as foreplay continued until he reached under his mattress to get a condom. According to Edwards, he pushed against N.O. as he was preaching for the condom, and he was sweating heavily at that time. Edwards recounted that after he got the condom, he tried to kiss N.O. again, but she moved his face away; he asked if everything was all right, and N.O. did not reply. Edwards claimed that he told N.O. he did not want any trouble, because he had just come home from serving his sentence for the sexual battery charge. Edwards testified that he told N.O. that she should get her things and leave.
Edwards went on to explain that his penis may have pressed against N.O.’s vagina during “foreplay,” but he insisted that he did not take his penis out of his boxers. He theorized that he was sweaty and he probably rubbed against N.O., getting his bodily fluid on her. Once N.O. was dressed, Edwards stated he went to the door behind her, told her not to call him again, and not to come back to his house because he felt like she “played him.”
Edwards stated that he did not scratch N.O., and he did not see her with a bracelet on while she was at his house. Edwards also denied threatening N.O., asserting that anything that happened between them was consensual. When asked about the STDs Edwards stated he had contracted chlamydia and gonorrhea from another girl, but he had been treated and could not have infected N.O. Edwards stated that he attempted to get tested but had not been allowed to do so.
|12On cross-examination, Edwards continued to deny that he did anything with N.O. that was not consensual. He was unable to explain how the DNA samples were recovered from the inside of the victim’s vaginal vault because he claimed he did nothing other than kiss and press against her while they were both in their underwear. Edwards denied having intercourse or digitally penetrating N.O.
Considering the evidence presented at trial, the state was able to prove the essential elements of forcible rape. Through the victim’s testimony, the state was able to show that Edwards penetrated the victim’s vagina with his penis against her will while he held her down. As related by N.O., when she attempted to fight him off, Edwards cautioned her not to do so. N.O. further testified that she was scared to continue to resist when he threatened her. The physical evidence showed that the victim had a small scratch on her wrist and the cervix of her vagina was red. She was also infected with chlamydia and gonorrhea, two STDs that also affected Edwards. Additionally, Edwards could not be excluded as a donor of the DNA retrieved from the victim’s body during the rape kit examination.
N.O.’s testimony alone is sufficient to establish the essential elements of the offense. Additionally, her account of the events was corroborated by scientific and physical evidence obtained shortly after N.O. reported to the Inhospital to be examined. Edwards’ attempt to explain that he was sweating profusely and could have transferred his DNA onto the victim during foreplay was apparently not believed by the trier of fact. Notably, Edwards’ attempt to explain away his previous conviction for sexual battery certainly could have worked to call into question his testimony in this case. Whereas this court is not in the position to assess the credibility of witnesses or reweigh evidence, on the face of the record alone, the testimony of the two involved parties is telling. Even on the cold record, Edwards’ version of events is highly suspect. We see no error in the trier of fact’s conclusion that Ed *351 wards was guilty of forcible rape. This assignment of error is without merit.

Excessive Sentence

In his second assignment of error, Edwards alleges the trial court failed to consider all of the mitigating circumstances in his case and that there were not enough aggravating circumstances to warrant the imposed sentence. He further contends the sentence is excessive and is grossly out of proportion to the severity of the crime. Edwards specifically argues that the trial court failed to consider the fact that his parents were drug addicts who died when he was nine years old or the fact that he was pursuing a college education at the time of his arrest. Additionally, Edwards contends the trial _J^court failed to consider the fact that there was no physical injury to anyone as a result of his actions. We disagree.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.02/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.08/13/08), 989 So.2d 267, writ denied, 2008-2697 (La.09/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 10491 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.08/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.05/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker; 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.09/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379.
Prior to the sentencing hearing, the state filed a habitual offender bill of information against Edwards charging him as a third felony offender, and he stipulated that he was a second felony offender and would be sentenced as such. Thus, the state agreed not to pursue a third felony offender prosecution. Edwards was sentenced to 32 ½ years’ imprisonment at hard labor with the first two years to be served without the benefit of probation, | inparole, or suspension of sentence. He was also informed of the sex offender registration requirements of the sentence.
*352 The trial court indicated it considered the factors of La. C. Cr. P. art. 894.1 in determining Edwards’ sentence. It found that there would be an undue risk that he would commit another crime during a period of suspended sentence or probation, as well as the fact that Edwards was in need of correctional treatment or a custodial environment that could be provided most effectively by commitment to an institution. As aggravating factors, the trial court found that Edwards had persistently been involved in similar offenses, specifically the prior conviction for sexual battery as well as other unprosecuted allegations of sexual assaults and his arrest for failure to register as a sex offender that was not prosecuted. Additionally, the trial court considered that Edwards had a high number of arrests, approximately 15, with three misdemeanor convictions and two other felony convictions. The trial court found that Edwards did not demonstrate remorse, and he did not believe his behavior in the instant case or his other cases was inappropriate or criminal. The trial court also considered Edwards’ age at the time of his arrest, 33, in determining the sentence.
As mitigating circumstances, the trial court found that Edwards acted under provocation-the victim appeared to willingly and voluntarily go to his | ^residence. The trial court also found that Edwards had a lack of family support or wholesome relationships. The trial court indicated he wished additional mitigating factors had been presented by the defense. The trial court also noted that Edwards had refused several plea agreements from the state.
Here, Edwards has failed to show that the trial court abused its discretion in assigning this sentence. The record shows that the trial court considered Edwards’ family history, his work and educational history and his criminal history. There is no requirement that specific matters be given any particular weight at sentencing. During sentencing, the trial court did acknowledge Edwards’ family history and background, noting that Edwards did not have a wholesome relationship or family support. The trial court was also aware of the other factors Edwards claimed were not considered, because during the trial of the matter it was made clear that he was in college at the time of the offense and his arrest and the victim’s injuries were detailed. So considering, it cannot be said that the trial court failed to identify and consider the appropriate sentencing factors.
Additionally, considering Edwards’ criminal history and propensity for committing sexual offenses without accepting responsibility for his actions, it cannot be said that his sentence is excessive. Considering this | ^multiple sexual offender’s history of preying on women, this sentence does not shock the sense of justice. It is particularly disturbing that Edwards has committed an extremely similar crime twice, and yet both times has denied culpability. Edwards’ apparent lack of remorse is also unsettling. The sentence is not grossly out of proportion to the seriousness of the offense; therefore, we conclude that this assignment of error is without merit.
Conclusion
For the foregoing reasons, the conviction and sentence of Jarvis Edwards are affirmed.
AFFIRMED.

. In accordance with La. R.S. 46:1844(W)(l)(a), the victim will be referred to by initials.