WILLIAMS, J.
|¶The defendant, Lonnele Jamal Shelton,[1] was indicted by a grand jury for second degree murder, a violation of LSA-R.S. 14:30.1, and armed robbery, a violation of LSA-R.S. 14:64. Pursuant to a plea agreement, the defendant pled guilty to manslaughter, a violation of LSA-R.S. 14:31, and the armed robbery charge. In exchange for the defendant’s guilty plea, the state agreed to recommend that the sentence for the armed robbery conviction not exceed 60 years. Following a sentencing hearing, the trial court sentenced the defendant to serve 40 years at hard labor for the[1] manslaughter conviction. With regard to thé ármed robbery conviction, the defendant was sentenced to serve 50 years at hard labor, without the benefit of probation, parole or suspension of sentence. The sentences were ordered to be served concurrently. For the following reasons, we affirm. .
FACTS
On April 26, 2011, at approximately 2:00 p.m., officers from the Farmerville Police Department were dispatched to the residence of Johnny Ray Simmons in reference to a shooting. Upon their arrival, the officers discovered that Romon Johnson had been shot multiple times; Johnson was pronounced dead at the scene. The police investigation revealed that the following individuals were in the apartment when the shooting occurred: the victim, Simmons, Nicholas Higgins, the defendant, Lonnele Jamal Shelton, his brother; Jon-terrance Winzer, Meagan Warden, Simmons’ nine-month-old' daughter, Simmons’ girlfriend, Ladrina Gray and Gray’s niece, Gerreal Gray. At the time of the shooting, the defendant was 16 years old; Winzer hwas 24 years old.
During the course of their investigation, the police officers learned from witnesses that on the morning of the shooting, Simmons and Higgins had arranged to purchase one-half pound of marijuana from Johnson for $310. When Johnson arrived at Simmons’ apartment, the men went into the kitchen, where the transaction was completed. As Johnson counted the money, the defendant approached him from behind and shot him once in the back of the neck.[2] The impact from the gunshot knocked Johnson to the floor. A struggle ensued between Higgins and'the defendant for control of the gun. During the struggle, Winzer began to hit Higgins with the handle of a mop. Once the defendant gained control of the gun, he pointed the *307 weapon at Higgins and ordered him to “be quiet.” Thereafter, Winzer noticed that Johnson was “still moving.” Winzer took the gun from the defendant and shot Johnson two more times, striking him in the right cheek and right eyelid.[3] Winzer then gave the gun back to the defendant. The doorbell rang as the defendant and Winzer were discussing what to do with Johnson’s body. The defendant and Winzer ran upstairs; Higgins escaped through the front door. Thereafter, the defendant and Win-zer returned downstairs, grabbed the marijuana and the money, and fled the scene. Warden also fled the scene with them.
Police officers questioned all individuals present m the apartment at |athe time of the shooting. Those interviews resulted in the defendant and Winzer being implicated as the shooters. Arrest warrants were issued, and the defendant and Winzer were ultimately apprehended and arrested in Oklahoma City, Oklahoma. On May 23, 2011, the defendant and Winzer were charged by separate bills of indictment with second degree murder and armed robbery.[4]
On March 19, 2014, the defendant pled guilty to manslaughter and armed robbery. In exchange for the defendant’s guilty plea, the state recommended that the sentence for the armed robbery conviction not exceed 50 years.' The state did not make a sentencing recommendation with regard to the manslaughter conviction. Defense counsel noted that: the defendant was not stipulating to a 50-year sentence and that he reserved his right to appeal his sentences.
At a hearing on November 19, 2014, the state filed a victim .impact statement from the victim’s mother, Sharon Johnson Moses. Defense counsel filed the defendant’s educational records , from the Claiborne Parish School System. Thereafter, the defendant’s mother, Daisy Winzer Shelton, testified and requested leniency in sentencing. Ms. Shelton testified as follows: the defendant had been teased and .bullied by his peers in school; she encountered difficulty forcing the defendant to attend school; the defendant was placed in the special education program when he was seven years old because of “intellectual problems”; she did not remember the ^defendant ever successfully passing a grade in school; the defendant would be “socially promoted” due to his age, rather than his academic’ performance; she believed the defendant was in the eighth grade; the defendant “wound up” in alternative school; the defendant had béen evaluated by a psychiatrist,' who prescribed him medication for his" “mental issues”; the defendant did not regularly take his medication; she believed the defendant had a drug problem; the defendant began" smoking marijuana when he was 12 years old; approximately three weeks prior to the shooting, the defendant “got in trouble” for possession of " marijuana in" Minden; she and the defendant’s father divorced when the defendant was two years old; the defendant did not have a relationship with his father; Winzer acted as a father-figure "to the defendant; Winzer exerted “a" lot of influence” over the defendant; the defendant did whatever Winzer told him to do; Winzer had spent three years in jail and had been out of jail *308 for approximately one year when the shooting occurred; and Winzer and her daughter, who is one year older than the defendant, dropped out of school when they were 16 years old.
The sentencing hearing was held on November 25, 2014. The trial court noted that it had reviewed the presentence investigation report, the victim impact statement, the defendant’s educational records, the testimony of Ms. Shelton, the testimony from Winzer’s trial and the state’s sén-tencing recommendation. Thereafter, the court reviewed the facts of this case, noting that the defendant fired the first shot, which was directed to the victim’s head.The shot knocked the victim to the’floor, at which time | ,¶Winzer took the gun from the defendant and fired the fatal shots. The court further noted that the defendant fired a shot, in cold blood, with the intention of ending the victim’s life, and then left the scene with marijuana and other items. The court concluded that the defendant was a principal to the murder and armed robbery of the victim.
Further, the trial court considered the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1. The court concluded that there was an undue risk that the defendant would commit another offense if not incarcerated, the defendant was in need of correctional treatment and a lesser sentence would deprecate the seriousness of his crime. The court noted the following aggravating factors: the defendant’s conduct during the commission of the offense manifested deliberate cruelty to the victim; multiple people were in the apartment at the time of the shooting, thus the defendant knowingly created a risk of death or great bodily harm to more than one person; the defendant used threats of or actual violence in the commission of the offense; the offense resulted in significant permanent injury to the victim and his family; the defendant used a dangerous weapon in the commission of the offense; and the defendant used a firearm while committing or attempting to commit a controlled dangerous substance offense. As mitigating factors, the court noted the defendant’s young age and that he had no prior criminal history.
After considering the above factors, the trial court sentenced the defendant to 40 years’ imprisonment at hard labor for the manslaughter conviction. The court also sentenced the defendant to 50 years’ | (¡imprisonment at hard labor for the armed robbery conviction, to be served without the benefit of parole, probation or suspension o'f sentence. The sentences were ordered to be served concurrently.
Immediately following the imposition of the sentences, defense counsel orally moved for reconsideration, arguing that the sentences were constitutionally excessive. More specifically, counsel asserted the following arguments: the defendant was only 16 years old at the time of the offense; the defendant’s older brother, Winzer, who had a criminal history and acted as a father-figure to the defendant, exerted influence over him; the defendant’s previous enrollment in special education reflected an intellectual disability, which, in turn, caused “behavioral and mental health issues”; the defendant had a history of drug use; and the defendant did not fire the shot that resulted in Johnson’s death.
The trial court denied the motion to reconsider sentence, finding that the factors highlighted by counsel had been considered in sentencing the defendant and that the 50-year sentence was reasonable. The court noted that although the defendant was young, he was prosecuted as an adult. The court also noted that the facts of the case demonstrated that, without any provocation, the defendant pulled a weap *309 on and shot the victim near his head with the intent to kill him. The court further noted that the defendant had received ample leniency by accepting the plea agreement.
The defendant now appeals.
DISCUSSION
The defendant contends his sentences are excessive under the facts of 17this case and the trial court failed to give sufficient weight to the. mitigating factors. The defendant argues that at the.time of the offense, he was very young, he had emotional and mental problems and he was greatly influenced by his older brother. He also argues that he accepted responsibility for his actions, he did not have a criminal history and he did not fire the shot that caused the victim’s death.
An appellate court utilizes a two-pronged test in reviewing a sentence for exeessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he or she adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267.
The important elements which should be considered during sentencing are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There, is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or. nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed, in light of the harm done, to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
Ordinarily, a defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. LSA-C.Cr.P. art. 881.2. ■ This rule is applicable to sentences imposed under an agreed sentencing cap, as well as sentences- for an agreed-upon term -of years. State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171; State v. Burford, 39,801 (La.App.2d Cir.06/29/05), 907 So.2d 873. However, in some instances, appellate courts have reviewed agreed- *310 upon or capped sentences, despite the procedural bar of LSA-C.Cr.P. art. 881.2, when the trial court intimates during the plea that appellate review of- the agreed-upon sentence is not foreclosed. State v. Smith, 49,163 (La.App.2d Cir.6/25/14), 145 So.3d 1097. See also State v. Jones, 48,774 (La.App.2d Cir.1/15/14), 130 So.3d 1033; State v. Smith, 47,800 (La.App.2d Cir.2/27/13), 110 So.3d 628; State v. Foster, 42,212 (La.App.2d Cir.8/15/07), 962 So.2d 1214.
A person convicted of manslaughter shall be imprisoned at hard labor for not more than 40 years. LSA-R.S. 14:31(B). A person convicted of armed robbery shall be imprisoned at hard labor for not less than 10 years and not more than 99 years, without benefit, of parole, probation or suspension of sentence. LSA-R.S. 14:64(B).
The trial court has wide discretion in the imposition of sentences within the statutory limits, and the sentences imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. The trial court’s' discretion in sentencing is not limited by sentencing recommendations from the state and the defense attorney. State v. Wortham, 47,431 (La.App.2d Cir.11/14/12), 107 So.3d 132; State v. Robinson, 33,921 (La.App.2d Cir.11/1/00), 770 So.2d 868. Where a defendant has pled guilty to an offense.which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792; State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. On review, an appellate court does not | ^determine whether another sentence may have .been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.01/25/12), 86 So.3d 29.
In the instant case, the defendant pled guilty and was sentenced in accordance with the state’s sentencing recommendation, We note, as did ‘the trial court, that the defendant pled guilty pursuant to a sentencing recommendation, and not á sentencing cap, and he reserved his right to appeal his sentences. ' Therefore, he is not precluded from seeking appellate review of his sentences.
After reviewing this record in its entirety, we find that the trial court did not abuse its discretion in sentencing the defendant to 40 years at hard labor for his manslaughter conviction, and to 50 years at hard labor without benefits for his armed robbery conviction. As stated above, prior to imposing the sentences, the trial court adequately considered the facts of this case, the information in the presentence investigation report, and the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1. The court also reviewed the victim impact statement,., the defendant’s educational records, and the testimony of the defendant’s mother regarding his family and social history. The court noted the violent nature of the offense, the cruelty to the victim, the risk of harm to more than one person created by the defendant’s actions, the use of a firearm, and the death of the victim. Further, in mitigation, the court considered the defendant’s- young age and lack of criminal history.
As the trial court noted, although the defendant did not fire the fatal lushot, the facts demonstrate that he-was a principal to the crimes. The defendant armed himself with a firearm, approached the victim *311 from behind, aimed the ■ firearm at the victim’s head and fired, striking the victim in the back of his neck. The defendant’s actions demonstrated his intent to kill the victim. The defendant and Winzer made sure the victim was dead, then fled the scene with the marijuana the victim had sold, and the money the victim had been counting when he was shot. Moreover, the • defendant substantially benefitted from the plea agreement .and reduced sentence exposure. He was initially indicted for second degree murder and was exposed to a mandatory,, sentence of life in prison. LSA-R.S. 14:30.1.
Considering the facts of this case and the benefit the defendant received from the plea agreement, the sentences do not shock the sense of justice, nor are they disproportionate to the severity of the offense. Consequently, we find that- the defendant’s sentences are not constitutionally excessive. The trial court did not abuse its discretion. This assignment of error is without merit.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s convictions and sentences.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.

. In some portions of the record, the defendant's first name is spelled "Lonelle."

. A subsequent autopsy report revealed that the bullet entered Johnson’s neck and exited the right ’side of his head. The wound was nonfatal, causing an injury to the subcutaneous tissue.

. The autopsy report revealed that the gunshot wound to the right eyelid was the fatal wound.

. A jury found Winzer guilty as charged and he was sentenced to serve life in prison on the murder conviction and 99 years' imprisonment on the armed robbery conviction. On appeal, this Court affirmed Winzer's convictions and sentences. State v. Winzer, 49,316 (La.App.2d Cir.10/8/14), 151 So.3d 135.