DREW, J.
|, Antonio Reyes was arrested, charged, and convicted of possession of cocaine, La. R.S. 40:967(C). He was sentenced to the maximum five years at hard labor. No fine was levied.
The defendant appeals his conviction and sentence. We affirm.
FACTS

Motion to Suppress

Defendant’s motion to suppress urged that law officers conducted an unlawful search and seizure, without probable cause, thereby violating his constitutional rights. He urged that the remedy for this illegality should be the suppression of the items seized and statements he made that night.
Officer John Provost, an agent with the Bossier City narcotics unit, testified that he participated in the investigation of a complaint that narcotics were being sold from two apartments in the building, the defendant’s apartment, No. 503, and the apartment next door, No. 504. Provost said they did not have search warrants. His team searched No. 504.
Sgt. Shane Culver testified that:
• he led the team investigating the residence at No. 503;
• he identified himself as a law officer when Reyes answered the door;
• he said he was investigating a drug complaint;
• Reyes consented when asked if the officers could enter and discuss the matter with him and look around;
• Reyes told the officers that no one else was at home;
• the officers then heard movement in the back of the apartment;
• the officers found Reyes’ roommate in a rear bathroom;
• all officers were clearly identifiable as law enforcement;
|2* Reyes repeatedly put his hands in his pockets;
*550 • Reyes was asked to remove his hands and any items from his pockets;
• one item that he removed from his pocket was a bag of cocaine; and
• Reyes voluntarily removed the items from his pockets when asked.
Antonio Reyes testified that he was in Apartment No. 503 of Cross Country Apartments, located at 1900 East Texas Street in Bossier City, when someone began pounding on the door. Just as he opened the door, three unidentified men entered. When asked whether they could enter and search his apartment, he denied the request and asked them to leave. One man began searching. They seized marijuana from a back room and cocaine from a front room. Both Reyes and his roommate were arrested.
In denying the motion, the trial court found that the defendant lied about his roommate’s presence, gave consent for the search, and voluntarily produced the contraband drugs from his pocket.

Trial

At trial, Sgt. Culver reiterated his testimony during the hearing on the motion to suppress. He swore that:
• the narcotics unit received information from an anonymous source that drugs were being sold from two apartments at 1900 East Texas Street in Bossier City;
• the information did not come from a confidential informant;
• the information did not come from an identified concerned citizen;
• no names were given as to the identity of the drug dealers;
• they did not have probable cause to justify obtaining a search warrant;
• a team of officers, including narcotics agents and uniformed officers Rfrom a street crimes interdiction unit, conducted a “knock and talk”;
• the team split into two groups, one for each apartment;
• his group consisted of himself, Sgt. Souter, and Officer Wood;
• all officers were clearly identifiable as police officers;
• when Reyes answered his knock at the door, Culver identified himself as an officer and explained they were investigating narcotics activity;
• Reyes gave permission for them to enter the apartment;
• he explained to Reyes that they wanted to look around;
• Reyes was nervous and persisted in putting his hands in his pockets;
• they asked him to remove his hands and empty his pockets;
• Reyes removed a small bag of white substance and put it on the table;
• the bag appeared to contain cocaine;
• the bag presented to him in court was the cocaine seized from Reyes;
• Reyes was arrested and asked if anyone else was in the apartment;
• Reyes said “no,” but officers heard a noise from the back;
• Reyes’ roommate, Joe Orange, emerged from the bathroom;
• the officers observed a partially smoked marijuana joint; and
• the officers also found a crack pipe on the couch.
Officer Ty Wood, a Bossier narcotics officer, testified at trial that:
• he was with the officers who knocked on defendant’s apartment door;
• he had on his police uniform, a vest labeled “Police” and a badge;
• Reyes gave the officers consent to enter, but not to search;
• he saw Reyes remove from his pocket some keys, a wallet, and a small bag *551 containing what appeared to be cocaine; and
• upon request, Reyes voluntarily removed his hands from his pockets and put the contents of the pockets on the table. 14At trial, Officer Provost testified that:
• an unknown person had called the anonymous narcotics hot line and left a tip that people were selling, using, or smoking marijuana between two apartments at the location on East Texas Street;
• he assembled a team of officers to investigate both apartments;
• he led a team investigating the unit next door and did not enter Reyes’ apartment until after the defendant and his roommate were in custody;
• he took all the evidence into custody and wrote up the police report;
• the bag shown him in court was what he sent to the crime lab; and
• he identified a certificate as to the test results confirming that the substance in the bag was cocaine.
DISCUSSION

Motion to Suppress

Our jurisprudence relative to the review of warrantless searches is well settled.[1]
|sOur law relative to the review of consensual searches is clear.[2]
*552 Our law relative to plain view seizures is also clear.[3]
Inadvertence is not required for a valid plain view seizure. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).[4]
Reyes voluntarily exhibited the physical evidence to the officers. The seizure is valid, as it is predicated upon lawful consent.

Sentencing

Our law on appellate review of sentences is well settled.[5]
*553 17At sentencing, the defendant’s extensive criminal record[6] was reviewed by the court, as reflected by a presentence investigation report (“PSI”).
La. R.S. 40:967(0(2) allows a person convicted of possession of cocaine to be imprisoned with or without hard labor for not more than five years, and a fine of not more than $5,000. No fine was imposed.
The trial court noted that this offense was the defendant’s fifth felony, and that he was fortunate that the state did not seek to adjudicate him as a habitual offender. The trial court concluded that Reyes deserved more than five years, but five years was the maximum prison sentence. We agree with the trial court’s comments and find that this sentence is justified.
Reyes filed a motion to reconsider his allegedly excessive sentence, urging that the court failed to consider any mitigating factors. It was denied.
We have reviewed the transcript and the PSI and really cannot find anything favorable. This maximum sentence is most deserved, as this defendant is the worst of this type of offender.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. When a warrantless search is conducted, the state has the burden of showing the search was justified as an exception to the warrant requirement of the Fourth Amendment. Three such exceptions are (1) consent, (2) the "plain view doctrine,” and (3) an inventory search.
The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985); State v. Ledford, 40,318 (La.App.2d Cir. 10/28/05), 914 So.2d 1168.
The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D); State v. Johnson, 32,384 (La.App.2d Cir.9/22/99), 748 So.2d 31.

. It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. Oral consent to a search is valid. Crews, supra. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Bodley, 394 So.2d 584 (La.1981); State v. Shumaker, 40,275 (La.App.2d Cir.10/28/05), 914 So.2d 1156. This common authority stems not so much from one’s property interest, "but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit *552 the common area to be searched.” United States v. Matlock, supra, 94 S.Ct. at 993, fn. 7. When the facts do not support a finding of actual authority, a search is reasonable within the meaning of the Fourth Amendment if the consent giver apparently has actual authority. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Shumaker, supra.
While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. Necessarily, voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case, which determination is to be given great weight upon appeal because of that court’s opportunity to observe witnesses and assess credibility. State v. Edwards, 434 So.2d 395 (La.1983); State v. Jennings, 39,543 (La.App.2d Cir.3/2/05), 895 So.2d 767.

.The plain view doctrine is an exception to the warrant requirement. State v. Young, 39,546 (La.App.2d Cir.3/02/05), 895 So.2d 753; State v. Ray, 471 So.2d 831 (La.App. 2d Cir.1985), writ denied, 475 So.2d 364 (La.1985). The plain view doctrine renders a warrantless search reasonable if: (1) the police officer is lawfully in the place from which he views the object; (2) the object’s incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Young, supra.
In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Supreme Court said the phrase "immediately apparent” was an "unhappy choice of words” because appellate courts were interpreting it as requiring officers to be nearly certain of the seizable nature of the items. This court reviewed Brown and its effect on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and concluded that this third element requires only probable cause to believe an item is evidence or contraband. State v. Camp, 459 So.2d 53 (La.App. 2d Cir.1984), writ denied, 462 So.2d 212 (1985). Probable cause, in circumstances where property is in plain view, is defined as a practical and nontechnical probability that incriminating evidence is involved, determined by the totality of the circumstances confronting the officer, State v. Evans, 441 So.2d 82 (La.App. 2d Cir.1983).

. Nineteen years after Coolidge v. New Hampshire, supra, the United States Supreme Court rendered Horton v. California, supra, which clearly eliminated Coolidge's requirement that a plain view seizure be inadvertent. Curiously, in State v. Seiler, 2012-0389 (La.5/25/12), 89 So.3d 1159, the Louisiana Supreme Court upheld a plain view seizure, quoting the Coolidge language requiring inad-vertency, without mentioning Horton, which removed that requirement. The next week, the Louisiana Supreme Court upheld a plain view seizure in State v. Bush, 2012-0720 (La.6/1/12), 90 So.3d 395, referencing Horton and not Coolidge.

. An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, *553 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 2008-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379. A trial court has broad discretion to sentence within the statutory limits. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641; State v. Guzman, 1999-1528, 1999-1753 (La.5/16/00), 769 So.2d 1158. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, supra.

. «Arrests for driving while intoxicated in 1981 and 1982;
• In 1983, Reyes pled guilty to attempted burglary of an inhabited dwelling and received a five-year suspended sentence;
• In 1984, Reyes pled guilty to possession of marijuana;
• In 1985, Reyes plead guilty to delivery of a controlled dangerous substance and was sentenced to serve 20 years in prison;
• In 1993, Reyes pled guilty to burglary of an inhabited dwelling and received a 25-year sentence, being paroled in 2005; and
• In 2008, Reyes pled guilty to unauthorized entry of a place of business and received a six-year sentence.