DREW, J.
| T Chance L. Oliver entered a “best interest” plea of guilty of aggravated incest.[1] He now appeals his sentence of 15 years at hard labor, five years of which were suspended, subject to five years of probation. We affirm.
FACTS
On July 26, 2012, officers of the Ouachi-ta Parish Sheriffs Office responded to Glenwood Hospital, where Gayla Adkins reported that her daughter, S.A.A., age 15, had been raped by the child’s stepfather, Chance L. Oliver.[2] The day before, Adkins had dropped off S.A.A. to visit with her stepbrother, J.O., age 18.
After J.O. fell asleep, the defendant called S.A.A. into his room and locked the door. He gave her eight Xanax bars, half a Lortab, and a morphine pill.[3] He made her drink three Screwdrivers (orange juice and vodka), then forced her to have sexual intercourse with him. S.A.A. could not recall many facts because of her intoxication. A rape examination confirmed recent sexual intercourse.
On the next day, July 27, 2012, the defendant was located at the Ouachita Correctional Center, where he was detained on an unrelated charge of domestic abuse battery. He admitted that S.A.A. and J.O. were at his house on the date in question, and that he had been drinking. He denied ^raping S.A.A., but said that she enticed him and got in bed with him, at which point he fell asleep.
*305 Investigators spoke with the defendant’s ex-boss, Paul Wilkerson, at Interstate Dodge, who advised that the defendant had told him, “I f* * * *d up, I f* * * *d that little girl last night.” DNA evidence implicated the defendant.
The trial court explained the defendant’s constitutional rights per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The defendant stated that he understood and wished to waive his rights and enter a plea of guilty, pursuant to Alford, supra.
A presentence investigation report (“PSI”) was ordered.
At the sentencing hearing, the defendant provided the trial court with:
• letters and reports from doctors, therapists and CASA regarding J.O.;
• certificates of the defendant’s completion of self-improvement courses; and
• letters to the court from himself, his son, his family and friends.
At the hearing, Gayla Adkins stated that:
• S.A.A. will never be the same;
• her daughter has not been able to return to school;
• she dresses in layers of clothing and refuses to wear makeup because she does not want people to see her or think she is pretty;
• S.A.A. loved the defendant as a father figure and stood up for him when anyone spoke negative of him; and
• on behalf of S.A.A., she requested imposition of the maximum sentence.
S.A.A.’s paternal grandmother, Mary Rawlinson, stated that S.A.A. |shad to be home-schooled because she refused to attend school. She testified that S.A.A. trusted the defendant because he had been a part of her life since she was nine years old, and that it was sickening that he would do this to her.
William McDonald, S.A.A.’s maternal grandfather, described the defendant as a manipulator who had ruined S.A.A.’s life. He begged the court to get him off the streets so that he could not harm others.
J.O. testified as to his wonderful relationship with and love for his father. He was worried about what would happen to him if his father went to prison. He did not know who would rear him in this event.
The trial court:
• reviewed the presentence investigation report;
• recited a detailed account of the facts of this case;
• summarized the letters and reports it had received;
• noted correspondence from J.O., alleging that it was he and not his father who had sex with S.A.A.;[4]
• reviewed the defendant’s personal and social history;[5]
*306 [,• found that the defendant is not the worst of this type of offender;[6]
• reviewed the sentencing guidelines set forth in La. C. Cr. P. art. 894.1;[7]
• noted that the defendant’s conduct caused the victim extreme trauma;
• commented that the victim is still distraught and has difficulty coping;
• stated that the defendant had to know the harm he would cause;
• said that the defendant inexcusably gave the victim drugs and alcohol;
• remarked that the defendant had shown no remorse for his conduct;
• found that this was a crime of opportunity; and
• concluded that the charge reduction greatly benefited the defendant.[8]
The trial court ordered the defendant not to contact the victim and to pay the costs of her psychological counseling under La. R.S. 46:2136.1. The court further advised the defendant as to the sex offender registration requirements.[9] No fine was imposed.
Both the defendant, pro se, and his attorney, filed motions to reconsider sentence, arguing that the sentence was unduly harsh and ^excessive under the facts and circumstances of this case, and that the trial court failed to adequately consider some mitigating factors. The motions were denied without a hearing.
The defendant claimed that his attorney misguided him.[10]
DISCUSSION
The defendant contended that:
• this sentence is excessive given the nature of this case;
• the trial court should have given more weight to mitigating factors;
• the court should have favorably considered his willingness to plead guilty, thereby sparing the victim and her family the pain of a trial;
• he has had a sad and unfortunate life;
• he has earned a GED and is a good employee;
• he has severe ADHD;
*307 • his minimal criminal history[11] reflects no prior claims of sexual abuse;
• he has substance abuse problems;[12] and
• this sentence entails an undue hardship on him and his son, J.O.[13]
In response, the state argued that:
• the trial court fully considered the factors in La. C. Cr. P. art. 894.1;
k* the defendant violated his stepdaughter by drugging and raping her;
• the adverse impact on the victim’s life is horrendous;
• the defendant greatly benefited from the plea agreement, reducing his potential sentencing exposure from 70 years to 20 years; and
• though the trial court found that this defendant was not the worst of offenders, it did describe his actions as a “crime of opportunity.”
La. R.S. 14:78.1(D)(1) provides that the sentence for aggravated incest is a fíne of not more than $50,000.00, or imprisonment, -with or without hard labor, for not less than five years nor more than 20 years, or both.
Our law on appellate review of sentences is well settled.[14]
This mid-to-high range sentence[15] is absolutely appropriate. The trial 17court reviewed all facts before it in light of La. C. Cr. P. art. 894.1, and properly punished a man who had horribly abused the trust of his teenage stepdaughter, by drugging, raping, and scarring her for a lifetime.
*308 There are no grounds to excuse or justify his conduct. The court adequately considered the defendant’s tragic family history and the significant impact his incarceration would have on his son. The court noted that the defendant is not the worst of this type offender, but also noted that the defendant substantially benefited from the plea agreement and reduced sentencing exposure.[16]
This sentence does not shock the sense of justice, nor is it disproportionate to the severity of this heinous offense.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

.The defendant was originally charged by bill of information with forcible rape and distribution of morphine. He was allowed to plead to the reduced charge of aggravated incest, La. R.S. 14:78.1, pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). As part of the plea agreement, the state agreed to dismiss the distribution of morphine prosecution.

. At the time of the rape, Adkins and Oliver were married, though separated. J.O. is the defendant’s son. He and S.A.A. remained close after the domestic breakup.

. She pretended to swallow the pill, which she later produced at the hospital.

. J.O. alleged this in correspondence to the court. He did not mention this while testifying at the sentencing hearing.

. The court noted that the defendant is 34 years old, healthy, has ADHD which he treats with medication, is musically talented, is a good car salesman, has a GED, and appears to be very intelligent with eloquent writing skills. The court stated that the defendant has had a hard life. The defendant was adopted at a young age. His adoptive father was injured in a construction accident and suffered severe brain damage, and his adoptive mother died from cancer. The defendant had a brother through his adoptive family, but he died in a car wreck, and his adoptive father blamed him for his brother's death. When the defendant learned that he was adopted, he contacted and had plans to meet his biological mother, but the night before they were to meet, she committed suicide. The defendant had two children, one of whom *306 is J.O., with his first wife, who later died from multiple sclerosis, and two children with his second wife, Gayla Adkins, from whom he is now separated. The court noted that the defendant’s son, J.O., who lives with him, has special needs and that the defendant and J.O. love each other very much.

. The defendant had no prior felony convictions, but had pled guilty to domestic abuse battery and DWI, first offense. The PSI indicated that one dozen charges had been declined or dismissed in the six years before this crime occurred.

. The court found that there was a possibility that the defendant would commit another crime during a period of suspended sentence or probation; that he was in need of correctional treatment in a custodial environment that could be provided most effectively by his commitment to an institution; and any lesser sentence would deprecate the seriousness of this crime.

. One charge was reduced and the other was dismissed.

. Although the trial court did not verbally inform the defendant of the time period within which to file an application for post-conviction relief at sentencing, the defendant was properly advised of the prescriptive period in writing. See La. C. Cr. P. art. 930.8.

. The defendant stated in open court that he was well pleased with his representation in district court. Nonetheless, he now complains that his lawyer told him to write a letter only about his life, rather than the alleged crime, and not to speak at sentencing. He also complains that he didn’t realize that he would have to serve 85% of his prison time, since the offense to which he pled is a crime of violence. La. R.S. 14:2(B).

. Remarkably, in the six years prior to sentencing, this defendant had one dozen criminal charges refused or dismissed, ranging from violation of a protective order, DWI, drug possession, and domestic abuse battery. He was arrested for DWI 3 after he bonded out on the instant charges.

. The defendant claimed to be under the influence at the time of the incident.

. J.O. has medical and developmental difficulties.

. An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.I983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. This record shows thorough consideration of the factors and an adequate factual basis for sentence. Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379. A trial court has broad discretion to sentence within the statutory limits. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641; State v. Guzman, 1999-1528, 1999-1753 (La.5/16/00), 769 So.2d 1158. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, supra. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792; State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.

.A third of the sentence was suspended.

. The original charges had mandatory hard labor exposure: forcible rape (up to 40 years), and distribution of morphine (up to 30 years). La. R.S. 14:42.1 and La. R.S. 40:967(A)(1).